Stacie **ROGERS**

v.

Anthony **BROWN** and Kentucky Fried Chicken of California, Inc.

No. Civ.A. 96–7313–B–M1.

United States District Court, M.D. Louisiana.

Dec. 17, 1997.

---

Karl E. Krousel, Walter R. Krousel, Jr., & Associates, Baton Rouge, LA, for Stacie Rogers.

George Davidson Fagan, Leake & Anderson, New Orleans, LA, for Kentucky Fried Chicken of California, Inc.

## RULING ON MOTION TO STAY PROCEEDINGS PENDING ARBITRATION

POLOZOLA, District Judge.

This matter is before the Court on motion to stay these proceedings pending arbitration filed by the defendant, Kentucky Fried Chicken of California, Inc. ("KFC"). For reasons which follow, the Court finds that the arbitration agreement set forth in the employment application and agreement requires the arbitration of the dispute between the parties. Therefore, the motion for stay pending arbitration is granted.

### FACTS AND PROCEDURAL HISTORY

Plaintiff contends that she was a victim of sexual harassment by Anthony Brown, who was employed as assistant manager and later manager of the KFC located at 2151 South Sherwood Forest Boulevard in Baton Rouge, Louisiana.[1] Plaintiff began working at the Sherwood Forest Boulevard location of KFC beginning in March, 1995. Plaintiff alleges that Brown sexually harassed her from May, 1995 until July 1, 1996[2] on the premises of the KFC store. Plaintiff resigned from KFC in early July, 1996.[3] Plaintiff originally filed this suit in the Nineteenth Judicial District Court seeking damages and attorney fees under state and federal law. KFC timely removed this suit to federal court.

When plaintiff sought employment with KFC, she signed an employment application. The employment application signed and submitted to KFC by plaintiff contained an arbitration clause whereby plaintiff agreed, if hired by KFC, to arbitrate all claims concerning "(i) the termination of my employment, or (ii) sexual harassment" pursuant to the "prevailing rules of the American Arbitration Association" ("AAA") and the Federal

1. According to plaintiff's complaint, Brown was assistant manager until April, 1995, and was promoted to manager in early May, 1995.

2. Plaintiff's Petition, No. 6. The petition alleges these actions occurred through July 1, 1996. However, "Plaintiff's Memorandum in Support of Motion to Amend and Motion to Remand" ("Ptf.'s Memo") states plaintiff moved to Georgia to attend college in January, 1996. The petition must be incorrect. The offensive conduct must have occurred through July, 1995, instead of July, 1996.

3. Plaintiff's Petition, No. 11. See Footnote No. 2 above.

Arbitration Act ("FAA") "to the extent not inconsistent" with the rules of the AAA.[4]

Seeking to enforce the employment agreement and arbitration clause set forth above, KFC filed this motion for a stay pending arbitration of this matter pursuant to the FAA.

## ANALYSIS

### A. Legal Principles—Arbitration under the FAA

■ "The FAA provides that a written agreement to arbitrate a dispute arising out of that agreement is enforceable so long as the agreement is one 'evidencing a transaction involving commerce.'"[5] However, 9 U.S.C. § 1 provides that the FAA shall not apply to "workers engaged in foreign or interstate commerce." In *Rojas v. TK Communications, Inc.,* the Fifth Circuit held that a worker engaged in interstate commerce is one who "actually [is] engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are."[6] Because this contract clearly involves commerce and since plaintiff was not engaged in the interstate movement of goods, the FAA applies to this dispute.

"Section 3 of the FAA mandates that when an issue is referable to arbitration pursuant to a written agreement, the district court must 'stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.'"[7] Pursuant to Section 3 of the FAA, KFC seeks to have this Court stay these proceedings pending completion of arbitration.

The Fifth Circuit has succinctly summarized the legal considerations "[i]n adjudicating a motion to compel arbitration under the [FAA]."[8] Generally, a two step inquiry must be undertaken.

The first step is to determine whether the parties agreed to arbitrate the dispute in question. This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. When deciding whether the parties agreed to arbitrate the dispute in question, 'courts generally ... should apply ordinary state-law principles that govern the formation of contracts.' In applying state law, however, 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration.' The second step is to determine 'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'[9]

■ "In some cases, an additional threshold inquiry will be whether the parties

4. See Employment Application. The arbitration clause reads as follows:

> ARBITRATION OF EMPLOYEE RIGHTS
> Because of, among other things, the delay and expense which result from use of the court systems, if I am offered employment and accept, KFC and I agree that, unless otherwise prohibited by applicable law, to submit to binding arbitration any claims concerning (i) the termination of my employment, or (ii) *sexual harassment.* If applicable law expressly prohibits this agreement to submit any such claims for binding arbitration then, in that claim, I also agree, before such arbitration or Alternate Dispute Resolution process, as the case may be, is used: (i) to present any such claims in written detail to the KFC Human Resources Department; (ii) next to pursue to completion any KFC internal review process; and (iii) finally, to file and pursue to completion any external administrative remedies (such as with Equal Employment Opportunity

Commission). In any arbitration, the prevailing rules of the *American Arbitration Association* (and to the extent not inconsistent, the then prevailing rules of the *Federal Arbitration Act* ) shall apply. (emphasis added.)

5. *Williams v. Cigna Financial Advisors, Inc.,* 56 F.3d 656, 659 (5th Cir.1995) (quoting 9 U.S.C. § 2).

6. 87 F.3d 745, 748 (5th Cir.1996) (quoting *Asplundh Tree Expert Co. v. Bates,* 71 F.3d 592, 601 (6th Cir.1995)).

7. *Williams,* 56 F.3d at 659 (quoting 9 U.S.C. § 3).

8. *Webb v. Investacorp, Inc.,* 89 F.3d 252, 257–58 (5th Cir.1996).

9. *Webb,* 89 F.3d at 258. (citations omitted.)

agreed to arbitrate the issue of arbitrability itself or whether the parties intended for arbitrability to be decided by the court, as in a motion to compel arbitration." [10] " 'Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakabl[e]' evidence that they did so.' " [11] In this case, neither party has contended that the question of arbitrability must be first addressed by an arbitrator. Thus, since there is no "clear and unmistakable" evidence that the parties agreed to arbitrate arbitrability, the Court finds that this matter is ripe for adjudication.

■ Plaintiff argues that any order directing the parties to proceed to arbitration must also comply with the Louisiana Arbitration Law.[12] It is clear that 9 U.S.C. § 2 " 'is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.' " [13] By enacting the FAA, " 'Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements.' " [14] Furthermore, the " 'broad principle of enforceability' " of the FAA may not be " 'subject to any additional limitations under state law.' " [15] Thus, the Court may not apply any limitations in the Louisiana Arbitration Law, which are in addition to or inconsistent with the FAA. Therefore, plaintiff's arguments that the employment agreement does not comply with the Louisiana Arbitration Law cannot be considered by the Court.

### B. Application

The legal considerations in adjudicating a motion to compel arbitration under the FAA are outlined above. The Court shall discuss each of these considerations.

*Step 1—Consideration 1: Did the parties agree to arbitrate this dispute?*

■ The Court must first determine whether the parties agreed to arbitrate the dispute in question. To properly answer this question, the Court must decide whether there is a valid agreement to arbitrate between the parties. When deciding whether a binding agreement to arbitrate exists between the parties, the Court must consider state-law principles governing the formation of contracts.[16] "[T]he central issue in a case like this is whether the plaintiff's claim[s] . . . relate[ ] to the making of the arbitration agreement itself or to the contract as a whole." [17] "If the [claims] relate[ ] to the arbitration clause itself, the court should adjudicate the . . . claim[s]." [18] "If the [claims] relate[ ] to the entire agreement, then the [FAA] requires that the . . . claim[s] be decided by an arbitrator." [19] Plaintiff's arguments in her opposition to defendant's motion relate to the arbitration provision itself, and not to the formation of the contract. Thus, the Court will discuss whether there are any defects in the agreement to arbitrate.

■ Although plaintiff has listed a number of contractual defects which allegedly nullify the arbitration provision, plaintiff fails to cite any case law to support her arguments. First, plaintiff contends that the arbitration provision is contra bonos mores (against public policy) "in that, i[t] purports to waive a party's rights to litigation before they have

**10.** *Webb*, 89 F.3d at 258 n. 3.

**11.** *Webb*, 89 F.3d at 258 n. 3. (citations omitted.)

**12.** La.R.S. 9:4201, et seq. (West 1991).

**13.** *Perry v. Thomas*, 482 U.S. 483, 489, 107 S.Ct. 2520, 2525, 96 L.Ed.2d 426 (1987) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)).

**14.** *Perry*, 482 U.S. at 489, 107 S.Ct. at 2525 (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 11, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984)).

**15.** *Perry*, 482 U.S. at 489–90, 107 S.Ct. at 2525 (quoting *Keating*, 465 U.S. at 11, 104 S.Ct. at 858).

**16.** *Webb*, 89 F.3d at 258.

**17.** *R.M. Perez & Assoc., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir .1992).

**18.** *Perez*, 960 F.2d at 538.

**19.** *Perez*, 960 F.2d at 538.

been violated."[20] This contention is without merit. The arbitration provision merely compels the parties to arbitrate a dispute before they engage in litigation. In other words, under the terms of her employment agreement, plaintiff did not give up her right to litigate any employment dispute she may have with KFC. She only agreed to postpone her right to litigate the dispute until after the arbitration proceedings have been completed. This procedure complies with the strong public policy favoring arbitration in the United States and under Louisiana law.[21]

■ Plaintiff also contends the arbitration provision should be nullified because her consent was not freely given due to the lack of equal bargaining power between the parties. Plaintiff argues that the bargaining power was unequal because plaintiff did not have a choice of whether to sign the agreement if she desired employment with KFC. "Generally speaking, a contract of adhesion is a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party."[22] Although plaintiff has made such an argument, plaintiff has offered no evidence to show how the bargaining positions are unbalanced. In *Welch v. A.G. Edwards & Sons, Inc.,* the court held that when the employee "could have avoided the clause by simply rejecting the employment with the defendant[,]" the requisite difference in bargaining position was lacking. The *Welch* case involved a "respected licensed securities broker"[23] who could have easily found a position elsewhere. This case is similar. This case involves an unskilled worker seeking employment at a fast-food restaurant asking for $4.50/hour.[24] Plaintiff has failed to submit any evidence that other similar jobs were not available and thus, she was required to take the KFC job even though she did not approve of the arbitration provision. In fact, there is no evidence that plaintiff even objected to the arbitration provision and/or that she signed the application under protest. Therefore, as in *Welch,* the difference in bargaining positions in this case is also lacking.

Supplementing her argument regarding the difference in bargaining position, plaintiff also argues that the arbitration provision was not explained to her before she signed the employment contract. Plaintiff cites no case law or statutory authority establishing that such a duty exists.

■ Finally, plaintiff contends that the arbitration provision is not binding because she allegedly received no consideration for agreeing to arbitrate. Under Louisiana law, "the mere will of the parties will bind them, without what common-law courts would deem to be consideration to support a contract, so long as the parties have 'lawful cause,'" which need not have any economic value.[25] Under Louisiana law, no obligation can exist without lawful cause, which is defined as "the reason why a party obligates himself."[26] Plaintiff's cause or consideration for this contract was employment by KFC for which she was to be compensated. Plaintiff signed the agreement as a condition of employment, and "[e]mployment [is] a valid cause of [a] contract."[27] In this case, plaintiff received consideration in the form of employment for which she was compensated, and KFC received consideration in the form of labor to be provided by plaintiff. The mutual benefits received by plaintiff and the defendant

**20.** See Ptf's Memo at No. 4.

**21.** See *National Tea Co. v. Richmond,* 548 So.2d 930, 932 (La.1989).

**22.** *Welch v. A.G. Edwards & Sons, Inc.,* 677 So.2d 520, 524–25 (La.App. 4th Cir.1996) (citing *Golz v. Children's Bureau of New Orleans, Inc.,* 326 So.2d 865, 868 (La.1976), *cert. denied,* 426 U.S. 901, 96 S.Ct. 2220, 48 L.Ed.2d 827 (1976)).

**23.** *Welch,* 677 So.2d at 526.

**24.** See "KFC's Reply Memorandum in Support of Motion for Stay Pending Arbitration," Exhibit No. 1 at p. 3.

**25.** *Sound/City Recording Corp. v. Solberg,* 443 F.Supp. 1374, 1380 (W.D.La.1978).

**26.** La.C.C. art. 1966–67 (West 1987).

**27.** *Cellular One v. Boyd,* 653 So.2d 30, 34 (La. App. 1st Cir.), *writ denied,* 660 So.2d 449 (La. 1995).

from the employment agreement were sufficient consideration to support the contract.[28]

For the reasons set forth above, the Court concludes that the arbitration provision of the contract is not against public policy, and is not a contract of adhesion. Furthermore, the Court holds there was sufficient consideration to support the agreement. Having concluded there is a valid agreement to arbitrate between the parties, the Court will determine whether the dispute comes within the scope of the arbitration agreement.

*Step 1—Consideration 2: Does the dispute in question fall within the scope of the arbitration agreement?*

■ The arbitration clause agreed to by the parties covers "any claims concerning (1) the termination of ... employment or (2) sexual harassment." Plaintiff's claims against KFC and Brown are for sexual harassment, battery, and defamation. Plaintiff argues that the battery and defamation claims do not fall within the scope of the agreement. In addition, plaintiff argues the agreement does not cover claims against co-employees. Therefore, plaintiff contends that her claims against Brown are not covered by the arbitration agreement.

The Court finds that the sexual harassment claim does fall within the scope of the arbitration agreement while plaintiff's other claims are outside the scope of the arbitration agreement.

*Step 2: Have legal constraints external to the parties' agreement foreclosed the arbitration of those claims?*

■ Plaintiff has asserted one legal constraint external to the agreement which allegedly forecloses arbitration of her claims. Plaintiff argues that KFC has waived its right to compel arbitration by failing "to invoke, compel or cooperate" in the arbitration process. Plaintiff specifically alleges that plaintiff's counsel "has requested that this matter be formally arbitrated after informal attempts to resolve this case prove[d] a waste of time and a delay in seeking redress." [29] Plaintiff claims that she made two separate written requests to KFC to arbitrate this matter on April 8, 1996 and July 19, 1996, but KFC did not respond.

■ "In general, [the Fifth Circuit has] hesitate[d] to find that a party has waived its contractual right to arbitration." [30] There is "a presumption against finding waiver." [31] "A party asserting waiver thus bears a heavy burden of proof in its quest to show that an opponent has waived a contractual right to arbitrate." [32] However, "[a] court will find such a waiver when the party seeking to invoke arbitration actively participates in litigation, or delays in moving to compel arbitration to the prejudice of the other parties." [33]

■ Plaintiff argues that KFC's delay in taking action to compel arbitration has caused her prejudice. This argument is not supported by the record. It is clear that KFC filed a motion to compel arbitration within two weeks of being served with the suit.[34] In addition, "[p]re-suit inactivity does not invoke the judicial process and cannot support a finding of waiver." [35] This suit was filed on June 5, 1996 and KFC was served on September 5, 1996. Thus, plaintiff's April 19, 1996 letter was sent to the defendant before the suit was filed, and the July 16, 1996 letter was sent before KFC was even served. It can be fairly said that KFC's alleged inactivity, after each letter was sent by plaintiff, was "pre-suit inactivity" and cannot be construed as a waiver. Based on the facts of this case,

---

28. See *Combs v. Howard*, 481 So.2d 179, 181 (La.App. 3d Cir.1985), *writ denied*, 484 So.2d 671 (La.1986).

29. Ptf's Memo at No. 11.

30. *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir.1991).

31. *Walker*, 938 F.2d at 577.

32. *Walker*, 938 F.2d at 577.

33. *Bunge Edible Oil Corp. v. M/V Torm Rask*, 756 F.Supp. 261, 269 (E.D.La.1991), *aff'd*, 949 F.2d 786 (5th Cir.), *cert. denied*, 505 U.S. 1207, 112 S.Ct. 2998, 120 L.Ed.2d 875 (1992) (citing *Frye v. Paine, Webber, Jackson, & Curtis, Inc.*, 877 F.2d 396, 399 (5th Cir.1989)).

34. KFC was served on September 5, 1996, and moved to compel arbitration on September 18, 1996.

35. *Walker*, 938 F.2d at 578.

the Court finds that KFC has not waived its right to arbitrate.

## C. *Conclusion*

 Applying the standards set forth by the Fifth Circuit Court of Appeals, the Court finds the arbitration agreement involved in this case is valid. However, the Court finds that only the sexual harassment claims fall within the scope of the arbitration agreement. Although the battery and defamation claims against Brown fall outside of the scope of the arbitration agreement, the Court believes the interest of justice and judicial economy mandate that these claims be stayed pending arbitration of the sexual harassment claim.

Therefore:

**IT IS ORDERED** that KFC's motion to stay these proceedings pending arbitration of the sexual harassment claim be and it is hereby GRANTED. The parties shall submit a copy of the arbitrator's decision within 15 days after the date the decision becomes final. Plaintiff's battery and defamation claims shall be stayed pending completion of the arbitration proceedings. The clerk shall administratively close this case until further orders of this Court.