778 So.2d 740 (2001)
JOHNSON'S, INC., d/b/a, Johnson's Furniture, Plaintiff-Appellee,
v.
GERS, INC., d/b/a Gers Retail Systems, Defendant-Appellant.
No. 34,268-CW.
Court of Appeal of Louisiana, Second Circuit.
January 24, 2001.
*741 LeBlanc, Maples & Waddell, L.L.C., By George R. Murphy, III, J. Burton LeBlanc, IV, Counsel for Appellant.
Rogers & Hearne, By Fred A. Rogers, III, William Lake Hearne, Michael B. Rennix, Shreveport, Counsel for Appellee.
Before BROWN, GASKINS and CARAWAY, JJ.
CARAWAY, J.
Between 1993 and 1998, the parties executed various agreements concerning sales, licensing, and servicing of computer equipment and software for the plaintiff's business. As a result of a dispute regarding the computer system's Y2K compliance, this action was filed. The defendant sought to dismiss the action with the exception of prematurity, contending that in the event of a dispute, the initial 1993 contract between the parties required arbitration. The trial court found that the parties had contracted in 1998 to address the Y2K problem and that their new contract did not require arbitration. After the dismissal of defendant's exception, we granted supervisory review and now affirm the trial court's ruling.

Facts
On the trial of the exception of prematurity, the trial court considered documentary evidence concerning the parties' contractual agreements only, without hearing any testimony from the parties. On December 15, 1993, for $34,927.57, Johnson's Furniture (hereinafter "Johnson's") executed a "Sales and License Agreement" (hereinafter the "1993 Agreement") in connection with its purchase of computer hardware and its licensing of an operating *742 system, database software and applications software from GERS, Inc., domiciled in San Diego, California (hereinafter "GERS"). The 1993 Agreement provided that "[a]ny dispute arising from this Sales and License Agreement ... shall be resolved by arbitration ... in San Diego, California." The "Software License" provision of the 1993 Agreement gave Johnson's, as Buyer, "the right to use each of the purchased licensed applications (as outlined in Schedule I), related materials and documentation only on the computer system(s) and peripheral equipment described in Schedule V of this agreement." Schedule V, "Hardware Description," described various items of computer equipment including an "AV4300" server.
The 1993 Agreement also provided for optional membership in the "GERS Retail Systems Institute," the terms of which membership were provided in a separate "Institute Membership Agreement." Johnson's opted for institute membership and contemporaneously with its execution of the 1993 Agreement, executed an "Institute Membership Agreement" (hereafter "IMA-1"). Payment of a predetermined monthly fee entitled the member to educational and technical support services from the Institute, GERS' service division.
The IMA-1's initial term was for one year with automatic renewal from month to month thereafter unless either party gave 60 days written notice of its intention not to renew. Section 5 of the IMA-1 specifically describes a member's obligation to pay for GERS' technical support services for installing and maintaining add-on hardware in the event the member purchases such hardware from a third party. Finally, the IMA-1 designated California as its choice of law provision and provided that "[a]ny dispute arising from this Institute Membership Agreement ... shall be resolved by arbitration."
On January 27, 1997, Johnson's executed a second Institute Membership Agreement (hereafter "IMA-2") covering services, support and training to "enhance system capabilities" and to "modify existing licensed programs to increase capabilities and/or correct licensed programs." GERS reserved the right to adjust the membership fee in the event "other peripheral equipment" was subsequently delivered to the member. The IMA-2 contained provisions concerning its term and arbitration rights which were identical to the IMA-1.
On February 24, 1998, GERS faxed a quote describing an Intel upgrade to Johnson's. The quote (hereinafter the "AV2100 Quote") identifies an AV2100 server/computer system comprised of various hardware components and software applications. The "Total System Upgrade" price was $21,154.25. Of this amount, $14,154.25 was for hardware and software and $7,000 was for GERS' integration services consisting of staging and configuring the new equipment. The AV2100 Quote stated "price good for 30 days." The "Batch Bar Coding Quote," also dated February 24, 1998, stated "[t]raining not included with this quote. Customer to visit GERS for Institute training."
During this interval, Johnson's accepted GERS' quote and acquired the new AV2100 system. GERS' Regional Sales Manager's letter dated March 10, 1998, assured Johnson's that the upgrade to the "new AV2100 system" would make its system "Y2K compliant," and "will address the critical Y2K challenges." A $14,154.25 check for the cost of the new hardware and software pursuant to the AV2100 Quote was paid by Johnson's on March 13, 1998.
GERS' Regional Sales Manager next wrote to Johnson's on May 5, 1999, identifying various technical and professional services which would be necessary to upgrade Johnson's new AV2100 system and quoted the price therefor. The letter invited Johnson's to sign the quote approving the upgrade, admonishing them to make the transition required "to put this behind us." At this juncture, the parties could not agree concerning the price for *743 making Johnson's equipment Y2K compliant. The disagreement stemmed from Johnson's belief that its AV2100 system was already Y2K compliant. Ultimately, Johnson's purchased a computer system from another party and filed this action for damages against GERS.
In presenting its exception of prematurity, GERS argues that resolution of Johnson's claim is governed by the arbitration clauses of its contracts. It characterizes Johnson's acquisition of a new AV2100 server in 1998 as an upgrade to existing hardware and software applications already purchased or licensed by it under the 1993 Agreement and further controlled by the terms of the Institute Membership Agreements.
In response, Johnson's argues that its 1998 acquisition of a new AV2100 system upgrade was a completely new contract, unrelated to either the 1993 Agreement, the 1993 IMA-1 or the 1997 IMA-2. The new 1998 contract, evidenced by the AV2100 Quote documents, contains no provision for arbitration in the event of a dispute.
Dismissing GERS' exception, the trial court found that a new contract was confected between the parties in 1998 and that no arbitration provision governed that contract. It is from this ruling that this court granted GERS' request for a supervisory writ on August 3, 2000.

Discussion
La. R.S. 9:4201 provides as follows:
A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
The failure of a party to arbitrate in accordance with the terms of an agreement may be raised either through a dilatory exception of prematurity demanding dismissal of the suit or by a motion to stay the proceedings pending arbitration. Wied v. TRCM, LLC, 30,106 (La.App.2d Cir.7/24/97), 698 So.2d 685; La. R.S. 9:4202. When the issue is raised by the exception pleading prematurity, the defendant pleading the exception has the burden of showing the existence of a valid contract to arbitrate, by reason of which the judicial action is premature. Cook v. AAA Worldwide Travel Agency, 360 So.2d 839 (La.1978); Yokem v. Sisters of Charity of Incarnate Word, 32-402 (La.App.2d Cir.6/16/99), 742 So.2d 906. The exceptor has the initial burden of showing that an administrative remedy is available, thus making the judicial action premature. Blount v. Smith Barney Shearson, Inc., on limited rehearing, 96-0207 (La.App. 4th Cir.2/12/97), 695 So.2d 1001, writ denied, 97-0952 (La.5/30/97), 694 So.2d 246.
Thus, the threshold inquiry is whether the parties have agreed to arbitrate the dispute in question. See generally, Rogers v. Brown, 986 F.Supp. 354 (M.D.La.1997). This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. Id. See also, Succession of Taravella, 98-834 (La.App. 5th Cir.4/27/99), 734 So.2d 149 (correspondence between counsel for parties in will contest not sufficient to establish agreement to arbitrate dispute). In the instant case, GERS must establish the existence of a valid and enforceable agreement to arbitrate in order for its dilatory exception of prematurity to be sustained.
GERS argues that the new hardware and software Johnson's purchased in 1998 amounted to a mere upgrade to Johnson's system; that the right to use the software arose from the 1993 Agreement; and that the right to the upgrade came from the *744 IMA agreements, all of which contain arbitration provisions. We disagree with this analysis of the parties' agreements and instead view Johnson's claims in its suit as arising from GERS' alleged breach of the separate sales agreement represented by the AV2100 Quote documents.
The 1993 Agreement is a sales contract which conveyed hardware and licensed software to Johnson's. The 1993 Agreement does not contain any provision regarding the continued effect of the contract in the event of future purchases of hardware from GERS or another party. Likewise, the software licensing provision of the 1993 Agreement is itself confined to the specific licensed applications delineated in the contract. Finally, the arbitration provisions in the 1993 Agreement and each IMA agreement do not contain language which would define the scope of arbitration broadly, so as to include any future transactions between the parties. Cf., Rauscher Pierce Refsnes, Inc. v. Flatt, 93-1672 (La. App. 4th Cir.2/11/94), 632 So.2d 807.
While the 1993 Agreement is a single written document constituting the parties' contract at that time, the AV2100 Quote documents exchanged by the parties in 1998 reveal an offer and acceptance embodying a separate contract. The delivery of new hardware components and software applications for the AV2100 system is not disputed. The new contract represented by the AV2100 Quote documents contains no provision for arbitration.
Opposing this view of Johnson's claims, GERS points out that Johnson's seeks relief for institute membership fees paid by it under the IMA-2 during 1998 and 1999, and that that contract requires arbitration. The amount of those fees, other charges and the $21,154.25 paid for the AV2100 Quote contract are listed in Johnson's petition as its items of damage. Nevertheless, the alleged breach set forth in the petition concerns the failure of the AV2100 system to be Y2K compliant as represented by GERS when the 1998 contract was perfected. While the damages for that breach may be measured in part by the amount of Johnson's payments for institute membership fees, Johnson's claim does not directly concern the IMA-2 contract.
In conclusion, the arguments made by GERS concerning the interrelationship of the software, hardware and upgrades are not supported by the written documentation of the parties' transactions, which was the only evidence presented to the trial court. No further explanation of the alleged link between the earlier contracts and the 1998 purchase of the AV2100 system was offered through testimony at trial. The written documentation of the parties' dealings constrains our interpretation of the 1993 Agreement with its arbitration provision as limited to the original AV4300 system and software specified therein which are not the subject of this dispute. The trial court's judgment rejecting GERS' exception of prematurity is affirmed. Costs of this appeal are assessed to GERS.
AFFIRMED.