438 So.2d 723 (1983)
CALDWELL COUNTRY CLUB, Plaintiff-Appellee,
v.
DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT (Department of Public Works), Defendant-Appellant.
No. 15683-CA.
Court of Appeal of Louisiana, Second Circuit.
September 20, 1983.
*724 James B. Frederick, Jr., Sharon F. Lyles, Robert W. Stratton, Baton Rouge, for defendant-appellant.
Cameron C. Minard, Columbia, for plaintiff-appellee.
Simon, Peragine, Smith & Redfearn by H. Bruce Shreves & Michael R. Daigle, New Orleans, for third party-defendants-appellees, Fidelity Fire Ins. Co.
Don C. Burns, Dist. Atty., Columbia, for third party-defendant-appellee, Caldwell Parish Police Jury.
Before PRICE, HALL and SEXTON, JJ.
PRICE, Judge.
Defendant, Department of Transportation and Development (Department of Public Works) appeals from a judgment for $12,000 to plaintiff, Caldwell Country Club, as a result of improvements to a drainage channel which allegedly caused flooding and silting of plaintiff's golf course. We affirm in part, reverse in part, and amend the judgment of the trial court for the following reasons.
Hurricane Creek is the natural drainage channel for a populated area in Caldwell Parish in the vicinity of Clarks and Grayson, *725 draining a residential area as well as a school complex. It flows in a southerly direction and borders the western side of plaintiff's, Caldwell Country Club, golf course. In its original state, the drainage artery was simply a somewhat narrow, meandering creek which drained into a swampy, low area. Due to the natural condition of the creek, water drainage was impeded and the northern areas bordering the channel experienced flooding after heavy rains. At the request of the Caldwell Parish Police Jury, the Department of Transportation and Development examined the area and presented plans and specifications to improve the drainage along the creek. In February 1978, the Police Jury passed a resolution authorizing the Department of Transportation and Development to perform the proposed improvements to Hurricane Creek. The resolution provided that the Police Jury would procure all of the rights-of-way or servitudes necessary for the construction. Additionally, the resolution provided that the Police Jury would hold the Department harmless from any claims for damages arising out of the project. In December 1978, the Department contracted with McCaskill Contractors to perform the construction, entitled Drainage Improvements of L-3 of W-40 and W-40, State Project Number XXX-XX-XX. The project basically entailed straightening and deepening of the creek and was designed for a five-year storm frequency. Originally, the excavation was planned to extend approximately seven and one-half miles, continuing approximately one mile and a half beyond the golf course. There was approximately a thirty-seven foot drop in elevation from around the beginning of the project to the swampy area. However, the project was terminated adjacent to the golf course at a point where a high pressure gas transmission line crossed the creek. It was found that the expense to lower the pipeline to permit the excavation beyond this point was not economically justified. Additionally, because the area where the project was terminated was located at the bottom of the watershed, the Department concluded that it would not be cost effective to continue the excavation as originally planned, since the improvement would not greatly reduce the probability of flooding in this low area. The excavation began in late December 1978. In January and February 1980 plaintiff experienced considerable flooding and silting over portions of the golf course following heavy winter rains. Plaintiff then brought this action seeking damages, naming the Department of Transportation and Development as defendant. The department consequently instituted a third party demand against the Caldwell Parish Police Jury, McCaskill Contractors, and American Fidelity Fire Insurance Company, insurer of McCaskill.
After a trial on the merits, the court entered judgment in favor of plaintiff against the defendant, Department of Transportation and Development, finding that the undertaken improvements had caused the flood damage to the golf course. The court declared that the hold harmless clause contained in the Police Jury resolution was a "contract of adhesion" which is unenforceable and therefore rejected the Department's third-party demand against the Police Jury. The court further found no evidence of negligence on the part of the contractor, William McCaskill, and dismissed the third party claims against him and his insurer, American Fidelity Fire Insurance Company.
On appeal, the Department seeks reversal of that portion of the judgment finding it liable for plaintiff's damages and the rejection of its third party demand against the Police Jury. In answer to the appeal, the plaintiff requests an increase in damages and a mandamus directing the Department to continue the project to a termination point beyond plaintiff's property as originally planned.
The aforementioned facts raise the following issues for this court:
(1) Whether the trial court was correct in finding the department liable and if so, was the amount of damages awarded to plaintiff appropriate.
(2) Whether the trial court was correct in finding the hold-harmless clause contained *726 in the resolution was a contract of adhesion thus dismissing the Department's third party demand against the Police Jury.
(3) Whether the trial court was correct in holding that a mandamus was an inappropriate remedy for plaintiff.

LIABILITY
The trial court found that the damage to the golf course was caused by the channel improvement and that the Department of Transportation and Development was liable under La.C.C. Art. 667. We affirm this decision finding that upon a review of the evidence, it is not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Although the evidence presented at trial clearly established that the golf course did suffer somewhat severe flooding in early 1980, there was insufficient evidence to support the conclusion that the excavation and improvement to Hurricane Creek in any way contributed to or aggravated the flooding. In fact, the testimony of the expert witnesses testifying on behalf of the Department of Transportation and Development clearly established that the improvement of Hurricane Creek did not increase the amount of water channeled down to the golf course but rather increased the speed at which the water was transported to the low-lying areas. Furthermore, the testimony of these experts established that because of the location of the golf course at the bottom of a large flood plain, the heavy rains would have resulted in flooding of the course regardless of the improvements to the creek. Finally, the testimony of the witnesses on both sides regarding the history of flooding on the golf course negates a finding that the excavation of Hurricane Creek caused the flooding in January and February 1980. The testimony and evidence set forth hereinabove make it clear that the plaintiff failed to prove that the flooding was caused by or aggravated by the works on Hurricane Creek and thus is not entitled to any damages caused by the flooding alone.
While the flooding was not caused or increased by the channel improvements, the evidence supports a finding that the siltation was. The golf course had flooded on previous occasions but when the flood waters receded there was little or no siltation nor damage to the course. However, when the course flooded after the improvements to Hurricane Creek, the receding flood waters deposited up to six inches of silt on portions of the course. Although it is impossible for plaintiff to prove conclusively that the excavation of the creek caused the siltation, the circumstantial evidence establishes that it is more probable than not that the siltation was, in fact, caused by the excavation. Obviously, an excavation project such as this left considerable loose soil in and around the drainage channel. Additionally, the very purpose of the project was to increase the flow of water down the channel so as to reduce flooding which would naturally erode some soil off the freshly exposed sides and bottom of the creek. In his testimony, one of the defendant's experts stated that the siltation could have been a result of the improvements. Therefore, it is more probable than not that the excavation of Hurricane Creek caused the runoff water to be more heavily laden with soil thus resulting the siltation when the flood waters receded.
La.C.C. Art. 667 provides that although a proprietor may do with his estate whatever he pleases, he cannot make any work on it which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him. Although there was no evidence of substandard conduct on the part of the parish, contractor, or the Department, proof of negligence is not required to recover under the article.
In a case involving damages to a residence resulting from works on a right-of-way the Supreme Court discussed La.C.C. Art. 667 as follows:
Article 667 is therefore a limitation the law imposes upon the rights of proprietors in the use of their property. It is a species of legal servitude in favor of *727 neighboring property, an expression of the principle of sic utere. An activity, then, which causes damage to a neighbor's property obliges the actor to repair the damage, even though his actions are prudent by usual standards. It is not the manner in which the activity is carried on which is significant; it is the fact that the activity causes damage to a neighbor which is relevant. This being ascertained, it remains only to calculate the damage which ensued.

Chaney v. Travelers Insurance Company, 249 So.2d 181 (La.1971) at page 186.

DAMAGES
Upon finding the Department liable for the damage to the plaintiff's golf course, the court assessed damages in the amount of $12,000. On appeal, plaintiff seeks an increase of damages to $41,487.39.
It is well-settled that upon review, the appellate court should not disturb the judge's assessment of damages unless it is found to be a clear abuse of discretion by the trial court. Martin v. Roberts, 331 So.2d 541 (La.App. 1st Cir.1976); Ashley v. Roberts, 331 So.2d 539 (La.App. 1st Cir. 1976) and citations therein.
The plaintiff established that the damages incurred were a result of the excavation. However, plaintiff's evidence as to extent of these damages was very speculative in nature. The Club had no records or receipts to show the expenses incurred in removing the silt from the affected portions of the golf course. Rather, the evidence consisted of estimates. While this court recognizes that the Club probably lost some revenues because portions of the course were unusable for a period of time, the evidence regarding these losses was highly speculative. Furthermore, the evidence does not support a finding that the golf course sustained any permanent damage.
In light of general insufficiency of plaintiff's evidence concerning these damages, it is the opinion of this court that the trial court abused its discretion in awarding plaintiff $12,000. Accordingly, we reduce the amount of plaintiff's damages to $5,000.

CONTRACT OF ADHESION
The trial court found that the hold harmless clause contained in the resolution passed by the Police Jury was a "contract of adhesion" and therefore invalid. The court stated that the Police Jury was forced to adopt the hold harmless clause in order to obtain the channel improvements and that the jury felt the clause only applied to the work of the contractor not the design or technical work by the department. Upon finding the hold harmless clause invalid, the court rejected the Department's third party demand against the Police Jury. This finding was clearly wrong.
The Supreme Court in Golz v. Children's Bureau of New Orleans, Inc., 326 So.2d 865 (La.1976) at page 869 defined a contract of adhesion as a "... standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party."
The Police Jury specifically requested that the department provide its expertise, perform, and fund the channel improvements which cost in excess of $100,000. In return for these services the Police Jury agreed to obtain rights-of-way and necessary servitudes for the improvements and to hold the department harmless from any claims for damages arising out of the project. The evidence showed that the resolution was prepared by the department.
It does not appear that there was such a difference in bargaining position between the parties so as to justify the application of the principle of contract of adhesion. The acceptance of the resolution was not forced upon the Police Jury and the assumption of liability by the Police Jury for all claims of damages arising out of the project is clear and unequivocal.
In its brief, the Police Jury argues that because the improvements were not continued beyond the golf course as originally planned, it should not be held liable. The Police Jury states that the project contemplated *728 in the resolution was never completed and the improvements on the channel in effect constituted a different project. This court finds that the work performed by the Department was substantially the same as the project contemplated by the parties at the time the resolution was adopted. The termination of the project a mile and a half short of the original design in no way altered the purpose of the project nor did it significantly affect the function of the improvements.
It must be remembered that this transaction was not a "contract" in the usual sense of the word. The Department got no benefit from the transaction whereas the Police Jury received valuable services in exchange for passage of the resolution. The obligations undertaken by the Department far exceeded the minimal obligations assumed by the Police Jury. It would be grossly inequitable to relieve the Police Jury of one of its obligations at this time.

MANDAMUS
At trial and on appeal, plaintiff requested that a mandamus issue against the Department of Transportation and Development directing it to extend the channel excavation approximately one mile and a half beyond the golf course as originally planned in the project. The trial court found that a mandamus was an inappropriate remedy in this case and this court affirms that finding.
A writ of mandamus is an extraordinary remedy set forth in the Code of Civil Procedure. La.C.C.P. Art. 3863 provides that a mandamus may be directed to a public officer to compel performance of a ministerial duty which is required by law. The jurisprudence is clear that a mandamus may not issue to compel performance of an act which contains any element of discretion, however slight. Rather, the act must be purely ministerial. See Clarco Pipeline Company v. Parish of East Baton Rouge, 383 So.2d 1296 (La.App. 1st Cir.1980), Bye v. Giarrusso, 292 So.2d 742 (La.App. 4th Cir. 1974), Karno v. Louisiana Tax Commission, 233 So.2d 592 (La.App. 4th Cir.1970), and Schwegmann Bros. Giant Super Markets v. Edwards, 323 So.2d 810 (La.App. 4th Cir. 1975).
Certainly the decision of the Department as to where to terminate the improvement project contained a large element of discretion and the remedy of mandamus is clearly inappropriate.
Furthermore, the evidence shows that the continuation of the excavation beyond the golf course would not alleviate the flooding experience by plaintiff. The golf course was located in a large flood plain and the channel ended in a swamp area which was only approximately seven and one-half feet lower in elevation than the golf course. To contain water drainage, quite extensive excavation would be required and this was not felt to be cost effective by the department.
For the above reasons, the judgment of the trial court finding the Department of Transportation and Development liable is affirmed: The judgment is amended to reduce the amount awarded from $12,000 to $5,000; that portion of the judgment relieving the Caldwell Parish Police Jury of liability and dismissing the third party demand of the department against the police jury is reversed and judgment is hereby rendered in favor of defendant, Department of Transportation and Development, against the third party defendant, Caldwell Parish Police Jury for the sum of $5,000, together with all costs of these proceedings in the trial and appellate courts.