794 So.2d 881 (2001)
Charles STADTLANDER and Christine Robinson, Plaintiff-Appellee,
v.
RYAN'S FAMILY STEAKHOUSES, INC., Defendant-Appellant.
No. 34,384-CA.
Court of Appeal of Louisiana, Second Circuit.
April 4, 2001.
Writ Denied June 22, 2001.
*884 Hailey, McNamara, Hall, Larmann & Papale by Frederic Theodore Le Clercq, Metarie, Darren A. Patin, Baton Rouge, Alayne R. Corcoran, Metarie, counsel for Defendant-Appellant.
Bodenheimer, Jopnes & Szwak, by David A. Szwak, Shreveport, Mary E. Winchell, Counsel for Plaintiff-Appellee.
Before NORRIS, STEWART, GASKINS, PEATROSS and KOSTELKA, JJ.
NORRIS, Chief Judge.
Ryan's Family Steakhouses, Inc. appeals the denial of their exception of no cause of action based on a binding arbitration agreement. We reverse.

Factual Background
Charles Stadtlander and Christine Robinson filed suit against their employer, Ryan's, alleging that they were forced to work without compensation when their supervisors clocked them out hours before they actually ended working.[1] Ryan's filed an exception of no cause of action based on a binding arbitration agreement Stadtlander and Robinson signed when they applied for work with Ryan's and an exception of improper cumulation of parties because there was no commonality of interests. On December 16, 1999, the trial court granted Ryan's exception of improper cumulation of parties, but apparently relying on equity in regards to Stadtlander,[2] denied its exception of no cause of action. The trial court also found that the arbitration agreement was between the employees and Employment Dispute Services, Inc. (EDSI), and as such Ryan's did not have standing to rely on the agreement.
With regard to Robinson's claim, Ryan's filed an application for supervisory writ challenging the denial of the exception of no cause of action. Ryan's initial writ was denied by this court on January 27, 2000 for an UCRA 4-3 violation. After various delays in the trial court, this court ultimately concluded on July 20, 2000 that the ruling denying the exception could lead to irreparable harm, and therefore was an appealable interlocutory judgment. This appeal followed.

Law and Analysis: Timeliness of the Appeal
As a threshold issue in response to Ryan's appeal, Robinson argues that this interlocutory appeal is untimely and should be dismissed. Specifically, she claims that Ryan's is seeking a writ application from a December 16, 1999 ruling,[3] and, based on *885 UCRA 4-3, the return date cannot exceed January 16, 2000, unless an extension of time is filed within the original or extended return date period. Ryan's writ (and this subsequent appeal), Robinson urges, is untimely because it was filed on June 15, 2000, six months after the original filing period for writ applications.
Appeals are favored in the law and should be maintained unless a legal ground for dismissal is clearly shown. Tucker v. Northeast Louisiana Tree Service, 27,768 (La.App.2d Cir.12/6/95), 665 So.2d 672, writ denied, 96-0063 (La.3/8/96), 669 So.2d 404; Reed v. Columbia/HCA Information Service, Inc., 99-1315 (La. App. 5th Cir.4/25/00), 761 So.2d 625; Mack v. Evans, 33,823 (La.App.2d Cir.4/7/00), 756 So.2d 1270. An appeal is not to be dismissed for a mere technicality. Tucker v. Northeast Louisiana Tree Service; supra; Reed v. Columbia/HCA Information Service, Inc., supra. Unless the ground urged for dismissal is free from doubt, the appeal should not be dismissed. Id.
By a ruling dated July 20, 2000, we found this case to be an appealable interlocutory judgment and remanded to the district court with directions to perfect an appeal within 30 days. The district court lodged the appeal with this court on August 2, 2000. Although the code of civil procedure delineates specific time lines for appeal from final judgments, La. C.C.P. art.2087, 2123, we find nothing in the code, and the plaintiffs fail to cite to anything which establishes a time frame to appeal an interlocutory judgment. We also note that interlocutory judgments may be amended at any time, see, e.g., Carner v. Carner, 97-128 (La.App. 3d Cir. 6/18/97), 698 So.2d 34. Moreover, a judgment refusing to order arbitration, if not immediately appealable, may constitute irreparable injury where the party seeking arbitration is subjected to a trial in a forum with no jurisdiction in the matter. La.C.C.P. art. 2983; Grote v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 96-551 (La.App. 3d Cir.11/6/96), 682 So.2d 926, 928; Rauscher Pierce, Refsnes, Inc. v. Flatt, 93-1672 (La.App. 4th Cir.2/11/94), 632 So.2d 807, 809. As such, considering the favored status of appeals in Louisiana law as well as the potential for irreparable injury, we decline to revisit our former ruling and find that this appeal is timely.

Propriety of Ryan's Exception of No Cause of Action
As a purely procedural matter, we note that although Ryan's filed an Exception of No Cause of Action, the district court took evidence and rendered its judgment on the merits purporting to interpret the arbitration agreement, although it was not directly mentioned in Robinson's petition. When ruling on an Exception of No Cause of Action, a court may only consider the four corners of the petition itself, and not extrinsic evidence; as such, the district court's judgment is inherently erroneous. La.C.C.P. art. 931. However, when evidence on an exception of no cause of action is presented and considered by the court without objection, as in this case, then both sides have consented to the consideration thereof and the pleadings are deemed expanded. Crosby v. Stinson, 33,6268 (La. App.2d Cir.8/23/00), 766 So.2d 615; Giles v. Cain, 99-1201 (La.App. 1st Cir. 6/23/00), 762 So.2d 734; Byers v. Edmondson, 97-0831 (La.App. 1st Cir. 5/15/98), 712 So.2d 681, writ denied, 98-1596 (La.10/9/98), 726 So.2d 29, cert. denied, Time Warner Enter. Co. v. Byers, 526 U.S. 1005, 119 S.Ct. 1143, 143 L.Ed.2d 210 (1999); Boykin v. Foster, 493 So.2d 731 (La.App. 2d Cir. 1986); Borden v. West Carroll Parish Police Jury, 28,967 (La.App.2d Cir.12/11/96), 685 So.2d 454.
*886 In the instant case, although Ryan's introduced the arbitration agreement into evidence for the first time as part of its exception, Robinson, in response, specifically disputed the agreement's applicability[4] and enforceability; at no time did Robinson object to the consideration of the agreement itself.[5] In addition, Robinson's petition implicitly includes the agreement, for it facially states that she was employed by Ryan's, and that her causes of action arise from that employment; of which the arbitration agreement is an incident. As such, we find that Robinson's petition was expanded to include the arbitration agreement and testimony offered at the hearing on the exception.[6]

Arbitration Clause: Standing
When Robinson applied for her job with Ryan's, she signed a "Job Application Agreement to Arbitration of Employment Related Disputes." The trial court specifically found that the arbitration agreement was in fact between EDSI, an arbitrator, and Robinson, and as such, Ryan's did not have standing to raise the issue. It apparently based this ruling on the boldface clause which stated that:
This agreement is with EDSI, not with the Company, and is not, nor is it intended to be, an employment contract or any part of an employment contract. This agreement does not affect or alter My "at will" employment relationship with the Company.
Ryan's argues that although the agreement is between EDSI and Robinson, it is an enumerated third party beneficiary to the agreement and is therefore entitled to rely on it.
A contracting party may stipulate a benefit for a third person, who is called a third-party beneficiary. La. C.C. art.1978. Under Louisiana law, such a contract for the benefit of a third party is referred to as a stipulation pour autrui. Paul v. Louisiana State Employees' Group Benefit Program, 99-0897 (La.App. 1st Cir. 5/12/00), 762 So.2d 136. A stipulation pour autrui is never presumed. Id.; Bulot v. Intracoastal Tubular Services, Inc., 98-2105 (La.App. 4th Cir.2/24/99), 730 So.2d 1012. Rather, the intent of the contracting parties to stipulate a benefit in favor of a third party must be made manifestly clear. Id. Additionally, to establish a stipulation pour autrui, the third-party relationship must form the consideration for a condition of the contract, and the benefit may not be merely incidental to the contract. Id. The party demanding performance *887 of an obligation pursuant to a stipulation pour autrui bears the burden of proving the existence of this obligation. Paul v. Louisiana State Employees' Group Benefit Program, supra.
The Arbitration agreement in the instant case specifically states that:
The Company ... [is a] "third party beneficiary" of My agreement with EDSI, and I am a "third party beneficiary" of others' agreements with EDSI. A "third party beneficiary" is someone who benefits legally from a contract between other parties.
In the preamble, the "Company" is defined as Robinson's "potential employer," which in this situation was Ryan's.
In addition to specifically designating Ryan's as a third party beneficiary of the agreement between Robinson and EDSI, the instant agreement clearly binds both Ryan's and Robinson to submit any applicable employment-related disputes to EDSI. See infra, pp. 6-7, at 887-88. As such, we find that the intended benefit to Ryan's is not merely incidental.
The trial court's finding that Ryan's did not have standing was based solely on the clause printed in boldface which was obviously designed to insure that a potential employee would not interpret the agreement as a promise to hire and to emphasize that any subsequent employment was "at-will" and not contractual. The trial court erred by premising its finding as to Ryan's standing merely on this one clause, and not even considering the following clause which specifically designated Ryan's as a third party beneficiary to the Robinson/EDSI agreement.
In sum, we find that the agreement is manifestly clear that Ryan's is a third party beneficiary to the arbitration agreement and the trial court erred in finding that Ryan's did not have standing to enforce it accordingly.

Applicability and Enforceability of the Arbitration Agreement
The gravamen of Ryan's arguments is that the district court erred when it failed to dismiss the case because Robinson agreed to a binding arbitration of all disputes by signing an agreement which stated, inter alia:
The following agreement between you and EDSI is a "selection of forum" agreement by which you agree that employment-related disputes between You and the Company [Ryan's] shall be resolved through arbitration. Any arbitration matter shall be heard and decided under the provisions and the authority of the Federal Arbitration Act, 9 U.S.C. § 1, as applicable.
As such, Ryan's contends that as a condition of the agreement, any employmentrelated dispute must be brought in the arbitration forum, not in state or federal court. The agreement further provided that:
Any employment-related dispute between the Company, Me, and/or other signatories which would otherwise be brought in State or Federal court will be brought ONLY in the EDSI arbitration forum and under EDSI Rules and Procedures, as modified or amended from time to time. (Other signatories to the same Agreement with EDSI may be, for example, supervisors, managers, and agents of the Company.)
Notably, the agreement was clear as to which disputes were subject to arbitration; specifically exempted from the arbitration agreement were "claims or charges handled by a State or Federal agency" such as the Equal Employment Opportunity Commission, state unemployment agency, or state office of worker's compensation. Nevertheless, the agreement was emphatic *888 that all disputes which would otherwise be subject to litigation were subject to arbitration:
Except as to claims or charges actually handled within a State or Federal agency, any and all disputes I may have with the Company, or in that company, its supervisors, managers or other agents may have with Me which would otherwise be decided in court, shall be resolved only through arbitration in the EDSI forum and NOT THROUGH LITIGATION IN STATE OR FEDERAL COURT.
The Federal Arbitration Act, 9 U.S.C. § 1 et seq. (FAA), which was specifically adopted by the agreement, establishes that as a matter of preemptive federal law,[7] any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the issue at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.[8]Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). In fact, a presumption of arbitrability exists; even when the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration. The weight of this presumption is heavy and arbitration should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that could cover the dispute at issue. Crochet Equipment Co., Inc. v. Board of County Comm'rs of the County of Phillips, Colorado, 20 F.Supp.2d 987, 989 (M.D.La.1998); see also Rogers v. Brown, 986 F.Supp. 354, 359 (M.D.La.1997).
Louisiana courts have recognized the heavy weight of this presumption, noting that as to issues of arbitrability, "even if some legitimate doubt could be hypothesized the Supreme Court requires resolution of the doubt in favor of arbitration." Grote v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra at 928; Collins v. Prudential Ins. Co. of America, 99-1423 (La.1/19/00), 752 So.2d 825, 827; Freeman v. Minolta Business Systems, Inc., 29,655 (La.App.2d Cir.9/24/97), 699 So.2d 1182, 1187 (parties' intentions are generously construed in favor of arbitrability). In fact, the Louisiana Arbitration Law, La. R.S. 9:4201-4217, parallels the FAA:
A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract ... or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
LSA-R.S. 9:4201.
In light of this strong federal and state presumption in favor of arbitrability, we *889 find that the district court was clearly wrong in denying Ryan's Exception of No Cause of Action. The agreement is a clear, express, and unequivocal agreement to arbitrate all employment-related disputes such as those brought by Robinson in the present suit. Ryan's assignments of error have merit.

Robinson's Arguments Against Enforceability of the Agreement
Recognizing the strong presumption in Louisiana law favoring arbitrability, Robinson nevertheless contends that the agreement is unenforceable, claiming that it is "vague and ambiguous" and it should be construed against its maker under La. C.C. art. 2056. We disagree.
While it is true that an arbitration agreement is a contract subject to the general rules of contract interpretation, Doctor's Associates v. Casarotto, 517 U.S. 681, 686, 116 S.Ct. 1652, 1655, 134 L.Ed.2d 902 (1996), due regard must nevertheless be given to the overwhelming state and federal policy favoring arbitration and any ambiguities as to the scope of the arbitration agreement must be resolved in favor of arbitration. McKee v. Home Buyers Warranty Corp. II, 45 F.3d 981 (5th Cir. 1995); Freeman, supra. Accordingly, Robinson's argument lacks merit.
Similarly, Robinson's argument that the agreement is void ab initio because it is an "adhesion agreement" between a fast-food worker and a corporation is meritless. Robinson has made no showing that she did not understand the agreement or would have refused to work for Ryan's had she been aware of the import of its terms. In fact, it is well settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that she did not read it, that she did not understand it, or that the other party failed to explain it to her.[9]Tweedel v. Brasseaux, 433 So.2d 133 (La.1983); Freeman, supra; see also, Flynn v. Aerchem, Inc., 102 F.Supp.2d 1055, 1058 (S.D.Ind.2000) (signature on arbitration agreement attesting to receipt of arbitral rules, even if rules not actually received, does not relieve a party from the terms of that agreement.). Put simply, once she signed the arbitration agreement, Robinson's claims that she never received the EDSI rules or understood the agreement's terms are not viable excuses for non-performance.
Robinson's claim that the agreement is invalid by virtue of the unequal bargaining positions of the parties is likewise without merit. Generally, an "adhesion contract" is a standardized contract, usually pre-printed, which is prepared by a party of superior bargaining power for adherence or rejection of the weaker party. Golz v. Children's Bureau of New Orleans, Inc., 326 So.2d 865, 868 (La.), app. dism., 426 U.S. 901, 96 S.Ct. 2220, 48 L.Ed.2d 827 (1976). In cases where it does not appear that a great difference in bargaining position exists, it is doubtful that the doctrine of adhesion is applicable. Caldwell Country Club v. Department of Transp. and Development, 438 So.2d 723, 727 (La.App. 2d Cir.1983).
In a factually analogous case, the United States District Court for the Middle District of Louisiana rejected the similar contentions of a fast-food worker who, like *890 Robinson, was presented a pre-printed arbitration agreement. Rogers v. Brown, 986 F.Supp. 354, 359 (M.D.La.1997). Like the Rogers court, we conclude that the worker, who could have found a similar position elsewhere, could have avoided the arbitration agreement had she objected to it by simply choosing to work elsewhere. Rogers, supra; see also, Welch v. A.G. Edwards & Sons, Inc., 95-2085, 95-2086 (La.App. 4th Cir.5/15/96), 677 So.2d 520. Consequently, we are reluctant to find the requisite difference in bargaining positions between the parties to justify labeling the present agreement a contract of adhesion. Rogers, supra; Welch v. A.G. Edwards & Sons, Inc., supra. In fact, the Supreme Court of Alabama found similarly in construing a virtually identical arbitration agreement involving Ryan's and another employee. Ryan's Family Steak Houses, Inc. v. Regelin, 735 So.2d 454 (Ala.1999). As such, this argument has no merit.
Moreover, allegations that an arbitration agreement is invalid due to irregularities in the "making" of the agreement other than fraud in the inducement (which Robinson does not raise in the present case) are more properly lodged with the arbitrator and not a court. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); Rojas v. TK Communications, Inc., 87 F.3d 745 (5th Cir.1996); Perez & Associates v. Welch, 960 F.2d 534 (5th Cir.1992); Freeman, supra.
Robinson also contends that the arbitration agreement contains vague and ambiguous language because it is internally contradictory. Specifically, Robinson points to Provision 1 of the agreement which states:
You retain all the substantive legal rights and remedies under state and federal law that you would otherwise have as an employee/applicant of the Company, and You will not have any additional substantive legal rights or remedies[.]
whereas, Provision 4 of Part A reads as follows:
An EDSI decision on any dispute shall be FINAL AND BINDING on all parties[.]
Robinson contends that the former section directly contradicts the latter because although Provision 1 states that the employee retains all substantive legal rights and remedies she may have under state or federal law, she loses these rights because Provision 4 forecloses any opportunity to appeal an EDSI decision. This internal contradiction, she argues, renders the entire agreement vague and unenforceable.
An arbitration agreement is a "kind of forum-selection clause," Scherk v. Alberto-Culver Co., 417 U.S. 506, 519, 94 S.Ct. 2449, 2457, 41 L.Ed.2d 270 (1974), and that by agreeing to arbitrate a particular cause of action, parties do not forgo any substantive rights, but only agree to submit to the jurisdiction of an arbitral, rather than a judicial, forum. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 31-32, 111 S.Ct. 1647, 1654-1655, 114 L.Ed.2d 26 (1991); Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc., 473 U.S. 614, 628, 105 S.Ct. 3346, 3354-3355, 87 L.Ed.2d 444 (1985). Even arbitration agreements compelling arbitration in a foreign country have been enforced as long as the parties' substantive rights have not been impinged. Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer, 515 U.S. 528, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995). Those "substantive rights" do not necessarily guarantee the right to a judicial proceeding, for under the logic of Gilmer, supra, the right to a judicial proceeding is waivable by contract so long as the rights that proceeding were designed to protect can be vindicated by other *891 means.[10] Thus, arbitration adequately protects Robinson's substantive rights, and her waiver of a procedural devicethe prosecution of her claim by means of a court trial and appealis enforceable.
Robinson's remaining contention is that the arbitration agreement is inapplicable because she is no longer employed by Ryan's and that agreement to arbitrate is only binding during the period of her employment. If not frivolous, this argument is devoid of merit, for the agreement itself states:
I absolutely must use the EDSI forum for any and all employment-related disputes and/or claims and/or related tort claims I may have against the Company and all other signatories to this Agreement which would otherwise be brought in court, even if the Agreement has been terminated since the date of the claim.
(Emphasis added).
At oral argument, for the first time, Robinson's counsel suggested that the FAA and the substantive body of federal and state law applying it are inapplicable because Robinson's employment does not affect interstate commerce. As a general rule, courts of appeal will not consider issues raised for the first time on appeal, and certainly not for the first time at oral argument. Segura v. Frank, 93-1271 (La.1/14/94), 630 So.2d 714; Gladney v. Sneed, 32,107 (La.App.2d Cir. 8/18/99), 742 So.2d 642, 650, writ denied, 99-2930 (La.1/14/00), 753 So.2d 215. Nevertheless, it is well-settled that the FAA applies to written arbitration agreements in contracts connected to transactions involving interstate commerce and that phrase has been broadly construed in favor of arbitration. Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 281, 115 S.Ct. 834, 843, 130 L.Ed.2d 753 (1995) (reach of FAA coincides with that of the Commerce Clause); Collins, supra at 828; Circuit City Stores, Inc., supra. Since Ryan's is a multi-state restaurant chain, the restaurant she worked at was located near an interstate highway, and EDSI is a South Carolina corporation, we find no merit to Robinson's suggestion that the present agreement does not, in some degree, affect interstate commerce. See, e.g., Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964); Katzenbach v. McClung, 379 U.S. 294, 302, 85 S.Ct. 377, 383, 13 L.Ed.2d 290 (1964); Ryan's, supra.

*892 Conclusion

For the reasons expressed herein, the judgment of the district court is REVERSED, the Exception of No Cause of Action is GRANTED, and Robinson's petition is DISMISSED without prejudice. Costs are assessed to the appellee, Christine Robinson.
REVERSED; EXCEPTION GRANTED; PETITION DISMISSED WITHOUT PREJUDICE.
GASKINS, J., dissents for the reasons expressed by J. PEATROSS.
PEATROSS, J., dissents with written reasons.
PEATROSS, J., dissenting.
I respectfully dissent for the following reasons. The majority erred in sustaining Ryan's exception of no cause of action. As a preliminary procedural matter, I believe that the petition, even if expanded by the introduction of Robinson's agreement with EDSI[1], does, in fact, state a cause of action. In other words, despite the existence of the EDSI agreement, Robinson states a viable cause of action within the four corners of her petition. The EDSI agreement does not extinguish her cause of action; rather, that cause of action is subject to an exception of prematurity, motion for summary judgment or motion to compel arbitration. The exception of no cause of action is not the appropriate vehicle to enforce, or to have the court determine the validity of, an agreement to arbitrate. Further, had Ryan's filed an exception of prematurity, motion for summary judgment or motion to compel arbitration, in order to prevail, it would have had to introduce not only the agreement between EDSI and Robinson, but also the alleged agreement between EDSI and Ryan's. The agreement between EDSI and Robinson states:
Your potential Employer ("signatory company" or "Company") has entered into an agreement with Employment Dispute Services, Inc. (EDSI) to arbitrate and resolve any and all employment-related disputes between the Company's employees (and job applicants) and the Company.
The agreement also contains the following provision:
D. The Company.. [is a] "third party beneficiary" of My agreement with EDSI, and I am a "third party beneficiary" of others' agreements with EDSI. A "third party beneficiary" is someone who benefits legally from a contract between other parties.
We have no proof, however, that such an agreement between Ryan's and EDSI exists; and, if it does in fact exist, we certainly have no evidence of what that agreement requires of Ryan's. Alone, the agreement between EDSI and Robinson must fail because it is essentially a unilateral agreement to arbitrate on the part of the employee with EDSI promising only to furnish an arbitral forum for the arbitration. Put another way, the agreement itself states that "this agreement is with EDSI;" it is not an agreement between Ms. Robinson and Ryan's. It is not, therefore, an arbitration agreement because in order to have an arbitration agreement, both parties must agree to arbitrate. And, as previously stated, there is absolutely no evidence before us that an agreement exists between Ryan's and EDSI and, even if such an agreement does exist, we have no evidence of its contents. In addition, the majority opinion points out that an arbitration agreement is a "selection of forum" agreement; however, this particular *893 agreement is selection of arbitrator agreement.
Moreover, EDSI has unfettered discretion as to the venue and proceedings in any arbitration conducted under the agreement. The agreement provides that all arbitrations be conducted according to "EDSI Rules and Procedures" which may be "modified or amended from time to time." This vests entire control of the arbitration process with EDSI. Additionally, EDSI has the unqualified ability and unilateral authority to change the "rules and procedures" of the arbitration process at any time without the knowledge or consent of the employee. In a very recent case out of Kentucky, the Sixth Circuit Federal Court of Appeal found an identical agreement between EDSI and a former Ryan's employee to be unenforceable for that very reason. Floss v. Ryan's Family Steak Houses, Inc., 211 F.3d 306 (6th Cir. 2000), cert. denied, 531 U.S. 1072, 121 S.Ct. 763, 148 L.Ed.2d 664 (2001). Finding a lack of consideration in the formation of the agreement, the court in Floss stated:
EDSI's promise to provide an arbitral forum is fatally indefinite. Though obligated to provide some type of arbitral forum, EDSI has unfettered discretion in choosing the nature of that forum. Specifically, EDSI has reserved the right to alter the applicable rules and procedures without any obligation to notify, much less receive consent from, Floss and Daniels.
The Floss court concluded that EDSI's promise was illusory and, thus, lacked mutuality of obligation or consideration, rendering the agreement unenforceable. Accord Blair v. Scott Specialty Gases, 2000 WL 1728503 (E.D.Pa.2000).
It is well-settled that arbitration agreements are to be construed under state law principles governing the formation of contracts. Rogers v. Brown, 986 F.Supp. 354 (M.D.La.1997); Floss, supra. Under Louisiana's law governing the validity of contracts, no obligation can exist without lawful cause, which is defined as the reason why a party obligates himself. La. C.C. arts. 1966, 1967. While this concept is not the same as common-law "consideration," it nonetheless contemplates a mutual benefit to the parties. In Rogers, supra, the arbitration agreement was between Kentucky Fried Chicken and the applicant for employment. The court in Rogers, therefore, found that the cause for the applicant's signing the arbitration agreement was employment for which the applicant would receive compensation. As stated above, the contractual scenario in the instant case simply does not support that conclusion. Any benefit received by Robinson must flow from EDSI. The only benefit promised by EDSI is that it will provide an arbitral forum for dispute resolutions. For reasons outlined below, EDSI is not even capable of supplying a fit arbitral forum under the agreement; and, therefore, there is no benefit to Robinson. In other words, there is no reason why, or cause for, Robinson to obligate herself to arbitrate under the agreement with EDSI. Thus, there is no valid contract.
In the same vein, and even more disturbing is the testimony of Robinson at the hearing on the exception wherein she denied ever having received a copy of EDSI's "Rules and Procedures" despite the provision in the agreement which indicates that a "copy of full EDSI Rules and Procedures" was provided to her.[2] Not only *894 did Robinson not receive a copy of EDSI's Rules and Procedures, Donald Southerland, a manager of Ryan's who was present when Robinson completed her application, testified that it was not the practice of managers to hand out copies of EDSI's Rules and Procedures to applicants. Further, Mr. Southerland admitted that he was not even sure what the "EDSI Rules and Procedures" were. Mr. Southerland also testified that managers of Ryan's were trained to have applicants sign the EDSI agreement first in the application process:
Q: Okay. Could you describe the fashion in which most of these agreements were signed by job applicants?
A: Theythey are attached to the application itself. A lot of times they're signed when we get handed the application. And those that aren't, that's the first thing we're trained to flip to, is that page where you have to sign it. Wewe just tell them we need you to sign this before we continue.
According to Mr. Southerland, managers would "get in trouble" if applicants were allowed to continue the application process without signing the EDSI agreement. Mr. Southerland further testified that the waiver of legal rights language in the agreement was not explained to applicants. Therefore, not only does EDSI have full control over the arbitration process, the applicant has no knowledge of what that process is, nor does the managerial staff of the particular Ryan's restaurant to which the applicant is applying.[3]
An additional basis for finding this agreement to be unenforceable is grounded in the language of La.-R.S. 9:4201. In that statute, the validity of an arbitration agreement is qualified by the language "save upon such grounds as exist at law or in equity for the revocation of any contract." In my opinion, overwhelming grounds exist in this case for revocation of the EDSI agreement. The majority relies on Ryan's Family Steak Houses, Inc. v. Regelin, 735 So.2d 454 (Ala.1999), wherein the same EDSI agreement was held not to be a contract of adhesion and was, therefore, valid and enforceable. In Regelin, Ryan's motion to compel arbitration was granted. One must remain mindful, however, that the arbitration forum provided under an arbitration agreement must allow for the effective vindication of the claim. Floss, supra; Regelin, supra (J. Johnstone, dissenting.) Justice Johnstone, in strong dissent to the majority opinion in Regelin, recognized this, concluding that the unfitness of an arbitrator precluded the effective vindication of the employee's claim. Such unfitness is, therefore, grounds for revocation of an arbitration clause. Justice Johnstone skillfully articulated why EDSI is an unfit arbitrator under the agreement:
First, the record shows that the arbitrator organization, Employment Dispute Services, Inc., ("EDSI"), in collaboration with the employer, Ryan's Family Steak Houses, enlisted as its own clients *895 or customers not only these plaintiff employees but also all of her applicants for employment with Ryan's. The arbitration agreement form drafted, executed, and promoted by EDSI goes so far as to require each other contracting party to agree that "I absolutely must use the EDSI forum ..." This solicitation is unseemly for a judge, as an arbitrator is supposed to be. The collaboration with Ryan's also creates an inescapable bias in favor of Ryan's.
Second, the arbitration agreement form in the context of the record shows that EDSI is collaborating with Ryan's in an elaborate ruse of mutual third-party beneficiary contracts, with EDSI serving as the straw-man in each contract some with Ryan's and its managerial personnel as the other contracting parties and others with the applicants for employment as the other contracting parties, and with the arbitration provisions binding and benefiting (sic) both sets of other contracting parties not only as such but as third-party beneficiaries of all the other contractsall for the obvious purpose of giving Ryan's all of the benefits of an employment contract with arbitration provisions but without any of the burdens of a written employment contract.
This "ruse" is illustrated by the provision of the EDSI agreement stating "this agreement is with EDSI, not the Company, and is not, nor is it intended to be, an employment contract or any part of an employment contract," but which is immediately followed by the provision affording "the Company" third-party beneficiary status. As Justice Johnstone opined, the bias on the part of EDSI in favor of Ryan's created by this "ruse" is inescapable.
Further, the majority opinion in Regelin, supra, was severely criticized in the subsequent case of Penn v. Ryan's Family Steakhouses, Inc., 95 F.Supp.2d 940 (N.D.Ind.2000). Construing an identical agreement executed by EDSI and an applicant for employment with Ryan's, the court in Penn followed the reasoning of Justice Johnstone's dissent in Regelin, supra, holding that the provisions of the EDSI agreement were incapable of producing an unbiased arbitration panel, thereby precluding effective vindication of the employee's claim. The Penn court disagreed with the Regelin majority's comparison of the EDSI agreement to "any arbitration agreement calling for the use of a particular arbitration organization." Justice Johnstone addressed this point as well, opining that "[n]either EDSI nor Ryan's can claim any benign comparison between EDSI and the American Arbitration Association ("AAA"), which is frequently chosen and named in arbitration agreements without any solicitation or collusion by the AAA." Rather, the court in Penn recognized the "uniqueness of the contractual configuration arising under the Agreement ... whereby an employer becomes a third-party beneficiary to a contract entered into between the employee and the arbitrator or arbitration organization." As the majority in the case sub judice points out, "Ryan's is a multi-state restaurant chain" and one can deduce from the cases described herein that Ryan's uses this "standard form" EDSI agreement in more than one state.[4] In that regard, the court in Penn recognized that "Ryan's is a repeat customer of EDS[5]," *896 thus giving EDSI an incentive to please Ryan's in the arbitration process. On the other hand, the employee is not a "repeat customer" of EDSI such that "there is no interest on the other side weighing in to balance or provide a check to EDS's incentive to please Ryan's." Penn, supra. I agree with the Penn court that this constitutes a "conflict of interest" and that any arbitration proceeding conducted by EDSI under this agreement would be "susceptible to bias at the employee's expense." Penn, supra.
Furthermore, while not the basis for striking down the agreement, the court in Floss, supra, expressed the same concern for agreements of this type of "unique" contractual scenario:
We have serious reservations as to whether the arbitral forum provided under the current version of the EDSI Rules and Procedures is suitable.... Specifically, the neutrality of the forum is far from clear in light of the uncertain relationship between Ryan's and EDSI. Floss and Daniels suggest that EDSI is biased in favor of Ryan's and other employers because it has a financial interest in maintaining its arbitration service contracts with employers. Though the record does not clearly reflect whether EDSI, in contrast to the American Arbitration Association, operates on a for-profit basis, the potential for bias exists. In light of EDSI's role in determining the pool of potential arbitrators, any such bias would render the arbitral forum fundamentally unfair.
The above cases speak directly to the issue before the court in the case sub judice, i.e., the pre-arbitration determination of whether the EDSI Agreement is a valid and enforceable arbitration agreement such that a party may be compelled to abide by its terms. The majority attempts to distinguish Floss, supra, and Penn, supra, on the basis that both cases involved claims under 9 U.S.C. § 10, stating that concerns about the fitness or bias of an arbitrator are "properly addressed in an action" under 9 U.S.C. § 10. This distinction is misplaced and the majority noted the reason why when it acknowledged that 9 U.S.C. § 10 provides limited judicial review of arbitral proceedings governed by the Federal Arbitration Act, which arises after arbitration has concluded. (Emphasis mine.) Common sense dictates that the arbitration has to have taken place before one can have a claim under 9 U.S.C. § 10, which reviews the arbitral process after an arbitration has occurred. To the contrary, in both Floss and Penn, the courts were addressing the validity and enforceability of the agreements in question pursuant to motions to compel arbitration before the arbitration process had commenced. If one party refuses to arbitrate and a motion to compel (or as in this case, an exception of no cause of action) is filed, the first question that must be answered by the court is whether there exists a valid and enforceable arbitration agreement between the parties. As previously stated, that determination is made through application of the relevant state law governing arbitration agreements and contract formation. Recall that Louisiana's arbitration law provides that an arbitration agreement may be found invalid on any grounds that exist in law or equity for revocation of such contract. Inherent unfitness and bias of the arbitral forum constitutes such grounds for revocation. This is precisely what Justice Johnstone concluded as did the majority in Penn, supra. Further, this reasoning provided the basis for the concern over these types of agreements expressed by the majority in Floss. The fact that the plaintiffs' claims in those cases involved federal statutory claims is irrelevant to the issue addressed by the Penn court, and that is *897 before this court, regarding the preliminary determination of the validity of the agreements prior to arbitration.
The majority also cites the very recent United States Supreme Court's decision in Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001), wherein the Supreme Court held that the FAA applies to pre-employment arbitration clauses in employment contracts and that the exclusion in Section 1 of the FAA, which excludes from the Act's coverage "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce," applies only to workers in the transportation industry. In footnote number 10, the majority states that Circuit City Stores holds "that statutory claims are also subject to a pre-employment arbitration agreement contained in an employment application." In the case sub judice, we are not concerned with whether the type of claim presented by Robinson is arbitrable under the EDSI agreement. Again, we must first determine whether a valid pre-employment arbitration agreement (or clause as in Circuit City Stores) exists; and, even under the FAA, state law governs the formation of contracts. See Blair, supra, and cases cited therein. It is only after that question is answered in the affirmative that the issue of what types of claims, statutory or otherwise, are subject to arbitration under the particular agreement or clause is presented. In the case sub judice, since there is no valid arbitration agreement to begin with, the latter issue is simply never reached.
Finally, arbitration is intended to secure a just and fair resolution of disputes between the parties without litigation. Again, the instant agreement is not between the disputing parties. Ryan's is not a party to the agreement and is not named in the agreement. Rather, a third party arbitral organization is contracting with the employee to provide the arbitral forum. It is unseemly that an agreement which purports to provide such a forum, but that reserves total control over the venue[6] and process to the arbitral organization, an organization which has every incentive to please its client, Ryan's, could be considered to be a valid, irrevocable and enforceable agreement.
As previously stated, I respectfully dissent and I would affirm the judgment of the trial court.
*898
 EXHIBIT A
 
 JOB APPLICATION AGREEMENT
 TO ARBITRATION OF
 EMPLOYMENT-RELATED DISPUTES
 Your potential Employer ("signatory company" or "Company") has entered into an agreement with
Employment Dispute Services, Inc. (EDSI) to arbitrate and resolve any and all employment-related disputes
between the Company's employees (and job applicants) and the Company. The following Agreement between
You and EDSI is a "selection of forum" agreement by which you agree that employment-related disputes
between You and the Company shall be resolved through arbitration. Any arbitration matter shall be heard and
decided under the provisions and the authority of the Federal Arbitration Act, 9 USC sec. 1, as applicable.
 The purpose of this agreement is to provide You and the Company a forum in which claims or disputes
with the Company and any other signatories may be resolved by arbitration rather than litigation. This
Agreement does not restrict you from filing a claim or charge with any state or federal agency, for example,
Equal Employment Opportunity Commission, state unemployment agency, state workers' compensation commission,
where applicable. Rather, the Agreement applies only to State of Federal court proceedings.
 A. Acceptance of EDSI Agreement
 Important aspects of Your acceptance of this Agreement are:
 1. You retain all the substantive legal rights and remedies under state and federal law that you
 would otherwise have as an employee/applicant of the Company, and You will not have any additional
 substantive legal rights or remedies;
 2. You retain the right to file a claim or charge with any State of Federal agency that would
 otherwise handle Your claim or charge;
 3. Except as to claims or charges handled within a State or Federal agency. You and the
 Company agree to use EDSI to resolve legal claims concerning You that either party would
 otherwise bring in State or Federal court;
 4. An EDSI decision on any dispute shall be FINAL AND BINDING on all parties.
 B. Agreement
 1. Any employment-related dispute between the Company, Me. and/or other signatories which
would otherwise be brought in State of Federal court will be brought ONLY in the EDSI arbitration forum and
under EDSI Rules and Procedures, as modified or amended from time to time. (Other signatories to the same
Agreement with EDSI may be, for example, supervisors, managers, and agents of the Company.)
 2. In consideration of the agreement by EDSI to provide an arbitration forum. Rules and
Procedures, and a hearing and decision based on any claim or dispute I (employee/job applicant) may file or
defend. I understand and agree to the following:
 A. Except as to claims or charges actually handled within a State or Federal agency.
any and all disputes I may have with the Company, or in that company, its supervisors, managers of other
agents may have with Me which would otherwise be decided in court, shall be resolved only through arbitration
in the EDSI forum and NOT THROUGH LITIGATION IN STATE OR FEDERAL COURT.
 B. The decision of an EDSI arbitration panel is final and binding on all parties. There is
no appeal by any party on the merits of the dispute either to State or Federal court.
 C. This agreement is with EDSI, not with the Company, and is not, nor is it Intended
to be, an employment contract or any part of an employment contract. This agreement does not
affect or alter My "at will" employment relationship with the Company.
 D. The Company and any other successor or assign, its signatory superiors, mangers
and other agents, are "third party beneficiary" of My agreement with EDSI, and I am a "third party beneficiary" of
others' agreements with EDSI. A "third party beneficiary" is someone who benefits legally from a contract
between two other parties.
*899
 E. I absolutely must use the EDSI forum for any and all employment-related disputes
and/or claims and/or related tort claims I may have against the Company and all other signatories to this
Agreement which would otherwise be brought in court, even if the Agreement has been terminated since the
date of the claim. In South Carolina and Texas this Agreement shall apply to personal injury tort claims where
the Company is a "non-subscriber" and is not a covered employer under the state's workers' compensation
insurance program.
 F. If any of the foregoing terms of the Agreement are determined to be in violation of any
law, rule or regulation or are otherwise unenforceable, that determination shall not affect any other clauses of the
Agreement. All other clauses shall remain in full force and effect. If any EDSI Rules or Procedure is determined
by any court of competent jurisdiction to be invalid or unenforceable, EDSI shall be permitted a reasonable period
of time to amend its Rules and Procedures in order to accomplish the arbitration purpose of this Agreement.
 G. My Agreement shall continue for the period of My employment with the Company
unless mutually terminated in writing by EDSI and Me.
 H. My Agreement supersedes any and all prior understandings and agreements
between the parties, or with the Company, concerning the resolution of any and all claims or disputes between
the Company, its supervisors, managers, and/or other agents, and Me. It contains the entire understanding and
agreement of the parties regarding these subjects. My agreement may not be altered or amended, except in
writing signed by the President of EDSI and Me.
 I. The agreement is effective immediately. I understand I have the right to consult with
an attorney of my choice.
 J. I have read the Agreement carefully and have been given a copy of full EDSI Rules
and Procedures. I knowingly and voluntarily agree to be bound by the terms and conditions of the Agreement
and EDSI Rules and Procedures, as modified and/or amended from time to time.
3-17-98 Chnssy A. Rabnson
_______ ______________________
 Date Name (Please Print)
 ______________________
 Address
 ______________________
 City, State, Zip
 ______________________
 Social Security Number
 
 Witness SIGNATURE
"The agreement must be notarized if not witnessed by an Agent of the Company. 8/15/93
---------------------------------------------------------------------------------------------------------------
Please indicate whether you wish to be considered for purposes of serving as an "Adjudicator" and participating
in hearings and deciding disputes under the EDSI Rules and Procedures.
 YES_________ NO____________
Note: Your indication of interest is no assurance that you will be selected for Adjudicator training or to serve as
an Adjudicator.
 Employment Dispute Services, Inc. P.O. Box 30326 Charleston, South Carollna XXXXX-XXXX
 Inquiries may be directed to EDSI's Toll Free Number: 800-892-5335
NOTES
[1] Stadtlander also made additional allegations of harassment and a worker's compensation claim. He is not a party to this appeal, so his claims will not be addressed.
[2] Testimony taken at the hearing on the exceptions indicated that although the application and arbitration agreement were dated two weeks after Stadtlander's 18th birthday, the documents were signed while he was still 17 years old and were subsequently post-dated. The court apparently based its decision, in part, on this apparent inequity. Ms. Robinson, however, was of legal age when she signed her agreement.
[3] The written judgment was not signed until February 2, 2000.
[4] In fact, Robinson's co-plaintiff, Statlander, relied on the agreement itself to defeat Ryan's exception as to him.
[5] To preserve an evidentiary issue for appellate review, it is essential that the complaining party enter a contemporaneous objection to the evidence or testimony and state the reasons for the objection. Stephens v. Town of Jonesboro, 25,715 (La.App.2d Cir.8/19/94), 642 So.2d 274, writs denied, 94-2351, 94-2557 (La.11/29/94), 646 So.2d 400.
[6] Even if the pleadings were not deemed expanded, we would likely treat Ryan's exception as one of subject matter jurisdiction. See, e.g., Martin v. Texaco, 94-2412, (La.App. 1st Cir. 5/5/95); 655 So.2d 549, 551, aff'd sub. nom., Matthews v. Farley Industries, 95-1387 (La.2/28/96); 668 So.2d 1144 (exception of no cause of action treated as exception of lack of subject matter jurisdiction); Anzalone v. Allstate Ins. Co., 97-0866 (La.App. 1st Cir.4/8/98), 714 So.2d 18. Moreover, although the dissent is correct in noting that an exception of prematurity, a motion for summary judgment, or a motion to compel arbitration are the preferred vehicles to enforce an arbitration agreement, an exception is nevertheless treated as what it actually is, not what it is titled. Traweek v. LaBorde, 30,551 (La.App.2d Cir.5/13/98), 713 So.2d 664, 666, writ denied, 98-1933 (La.11/6/98), 727 So.2d 449.
[7] The United States Supreme Court has noted that section 2 of the FAA constitutes a "congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses H. Cone, supra, 460 U.S. at 24, 103 S.Ct. at 941.
[8] A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. 9 U.S.C. § 2.
[9] The final section of the agreement, which is immediately above Robinson's signature, clearly states:

J. I have read the Agreement carefully and have been given a copy of full EDSI Rules and Procedures. I knowingly and voluntarily agree to be bound by the terms and conditions of the Agreement and EDSI Rules and Procedures, as modified and/or amended from time to time.
[10] Inherent in all arbitral proceedings pursuant to the FAA is limited judicial review under 9 U.S.C. § 10, which arises after arbitration has concluded. Robinson, however, does not allege any grounds for review under that section at the present time. As such, cases like Penn v. Ryan's Family Steakhouses, Inc., 95 F.Supp.2d 940 (N.D.Ind.2000), as well as the dissent in Regelin, supra, which both express concerns that an EDSI forum is "unfit" or "biased" in favor of the employer, are not persuasive. Such concerns, if credible, are properly addressed in an action under 9 U.S.C. § 10 rather than by pre-arbitral allegations based on speculation. Similarly, contrary to the suggestions raised by the dissent, Robinson never alleged or offered any evidence whatsoever that the arbitral forum could not allow for the effective vindication of her claim. Floss v. Ryan's Steak Houses, Inc., 211 F.3d 306 (6th Cir.2000), cert denied, 531 U.S. 1072, 121 S.Ct. 763, 148 L.Ed.2d 664 (2001), and Penn, supra, are facially distinguished as involving federal statutory employee claims under the Fair Labor Standards Act (Floss) and the Americans with Disabilities Act (Penn ). Recently, the United States Supreme Court has settled this issue by holding that statutory claims are also subject to a preemployment arbitration agreement contained in an employment application. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001), . The present case, however, does not involve such statutory claims; in fact, the instant agreement specifically excludes them.
[1] The agreement is attached to this dissent as "Exhibit A."
[2] Even if Robinson had been furnished with "EDSI Rules and Procedures," it would have served no purpose because of the sole right of EDSI to change the "Rules and Procedures" at any time.
[3] Citing Flynn v. Aerchem, Inc., 102 F.Supp.2d 1055 (S.D.Ind.2000), the majority makes the point that once Robinson signed the agreement, her claim that she did not receive a copy of the "EDSI Rules and Procedures" is not a "viable excuse for non-performance." While this may be the case, the practice of Ryan's regarding its failure to provide this information to applicants, but requiring an applicant's signature on the agreement before proceeding with the hiring process, illustrates the inequity of utilizing this type of agreement. I would agree that, if this agreement was a valid arbitration agreement, which I do not believe it is, Robinson may indeed be bound to the terms of the agreement by virtue of her signature.
[4] Cases cited in this dissent involved Ryan's use of identical EDSI agreements in Alabama and Kentucky in addition to Louisiana.
[5] The agreement in Penn refers to EDS rather than EDSI, however, both acronyms represent the same entity, Employment Dispute Services, Inc.
[6] In Penn, supra, Mr. Penn took issue with EDSI's control over the location of the arbitration hearing, asserting that the agreement should be found void because it did not state an exact location for arbitration or state that the arbitration would take place in a location convenient to him. The court concluded that Mr. Penn's argument was well-founded. With EDSI having total control over the entire arbitration process, and having the power to change the rules governing that process at any time, including the place where a given arbitration is to be held, there is no safeguard against EDSI setting an arbitration in a location which would make a plaintiff's participation extremely burdensome, if not impossible.