| iCULPEPPER, Judge, Pro Tem.
Caddo Parish Fire Districts Two, Three, Five and Six (hereinafter called “Fire Districts”) sought a writ of mandamus compelling the Tax Assessor for Caddo Parish (the “Assessor”) to levy back tax assessments for the years 1989, 1990 and 1991. The trial court denied their request, and they appealed. We reverse.
FACTS
Upon their creation by the Caddo Parish Commission, each fire district held an election within its district for the issuance of bonds to purchase fire equipment and to build stations. These improvements were to be paid for by an ad valorem tax on all property within the newly created district. A second tax was also approved to pay for maintenance and operations not to exceed 10 mills on all the property within the district and not to exceed 10 years.
Each year the governing authorities of the districts, through their respective Boards of Commissioners, would levy two tax millages, one for bonds and one for maintenance and operations. These resolutions were furnished to the Assessor as the basis for his placement of these taxes on the tax rolls for the respective districts. The Assessor would combine the two millages and calculate the fire district taxes based upon the assessed value of the property and homestead exemption and place the dollar amount for the fire districts’ taxes on the tax rolls. This procedure was followed each year for all the property originally located within the fire districts whether or not it had been annexed by the City of Shreveport.
When the City of Shreveport annexed portions of the respective fire districts before 1989, the Assessor stopped assessing the maintenance and operation taxes |2for the annexed property located within each of the districts. However, taxes were still assessed and collected to reduce the bond indebtedness.
Upon discovery that the maintenance and operations taxes were not being assessed, plaintiffs filed their petition for a writ of mandamus on December 11, 1992, alleging that the Assessor’s actions resulted in loss of revenue. The petition prayed for an order directing the Assessor to restore the prior tax years to the tax roll and to take any necessary action to restore the lost revenue to the plaintiffs.
Two opinions were rendered by the trial court in this case. In its first opinion, the trial court found that LSA-R.S. 33:221 was applicable and provided that a municipality and a fire protection district may enter into a contract to grant either the municipality or the fire protection district the exclusive right to provide service in the annexed area. The trial court recognized that no contract had been entered into between the City of Shreveport and the Fire Districts granting either the exclusive right to provide service in the annexed area. Therefore, the court granted plaintiffs’ writ of mandamus stating that
the Writ of Mandamus is granted and the Tax Assessor is required to reinstate the prior assessments for the maintenance and operation taxes in the fire protection districts as prayed.
The balance of the plaintiffs’ claim should not be decided in summary fashion but must rather await trial on the merits.
However, the parties were unable to agree on a proposed judgment, because they disagreed as to the relief the court actually granted. The trial court resolved this confusion in its supplemental opinion, filed September 22, 1993. The supplemental opinion reads, in part, as follows:
The intent of the opinion was that the properties (plural) should be assessed and that was the intent in using the term “as *158 sessments” in the plural tense. It was not meant that the Assessor was required to take action for the prior years of 1989, 1990, and 1991. As to those prior years, any responsibility for action or accountability must await trial on the merits. Mandamus is an extraordinary remedy which should be used sparingly by the courts and there must be a clear and specific legal duty which ought to and can be performed.
| a Judgment was signed by the trial court on February 3,1994, and filed into the record on February 7, 1994. The Fire Districts subsequently filed their devolutive appeals.
On March 1, 1994, the Ellerbe Road Estates Area Homeowner’s Association (the “Association”) filed a petition for intervention in the proceedings. The intervention also added the City of Shreveport by way of third party demand (claiming that the city had represented to them that the maintenance and operations tax would disappear if the property owners supported and were successful at annexation). On May 27, 1994, the Association filed a motion to dismiss all appeals before this Court on the basis that the Assessor had restored the annexed properties to the Fire Districts’ tax rolls for 1992, therefore there was nothing left to appeal. Furthermore, it argued that since the court did not decide the question for tax years 1989,1990 and 1991, but waited for a trial on the merits, this issue was not before the appellate court. A different panel of this court correctly rejected the Association’s motion to dismiss on June 28, 1994, holding that the trial court’s denial of the petition for mandamus filed by the Fire Districts was an appealable final judgment.
The Assessor restored the maintenance and operation taxes to the tax rolls for the annexed properties prior to trial. The taxes for 1992 and 1993 have been assessed and collected. Therefore, the only issue unresolved and before this Court is the Assessor’s failure to assess the maintenance and operation taxes for the annexed property for the years 1989, 1990 and 1991.
DISCUSSION
The Fire Districts contend that by providing municipalities and service districts the right to contract in LSA-R.S. 33:221(A), the legislature specifically | recognized that in the absence of a contract granting jurisdiction to the municipality, the fire district has the right to provide services and levy taxes in annexed areas. LSA-R.S. 33:221 provides in part as follows:
Sec. 221. Contracts; taxes
A. If a municipality annexes territory contained in a parochial water, sewer, or fire protection district, hereinafter collectively referred to as special service districts, the municipality and each such special service district are hereby authorized to enter into a contract granting to either the municipality or the special service district the exclusive right to provide service in the annexed area.
B. If the municipality and the special service districts provide in the contract that the municipality thereafter will have jurisdiction to serve the annexed area, the special service district shall continue to levy taxes in the annexed area for the retirement of any outstanding tax-secured bonds of the district and may continue to levy such maintenance tax as theretofore has been authorized for the full period of such authorization; however, the district shall not thereafter be authorized to levy any new maintenance taxes in the annexed area, and, if the district thereafter issues any tax-secured bonds, the assessed valuation of the annexed area shall not be used in computing the capacity of the district to issue such bonds, and taxes shall not be levied in the annexed area for the retirement of new bonds of the district, notwithstanding any provisions of law to the contrary.
It is only when the municipality and special service district enter into a contract and agree that the municipality will have the exclusive jurisdiction to service the annexed area that the district must cease levying maintenance taxes.
While not binding, we agree with an opinion of the Attorney General written on June 3, 1992, which states, in part, as follows:
By providing municipalities and service districts with a right to contract, the legis *159 lature has recognized that in absence of a contract granting jurisdiction to the municipality, the districts have the right to provide services (and levy taxes) in annexed areas.
* * * * * *
[I]t is only when the municipality and the special service district enter into a contract and agree that the municipality will have exclusive jurisdiction to serve the annexed area that the district must cease levying maintenance taxes therein, and even then the district “may continue to levy such maintenance tax as theretofore has been authorized for the full period of such authorization.”
La. Atty. Gen. Op. No. 92-296
MANDAMUS
It is well settled that a writ of mandamus will lie to compel the performance of a prescribed duty that is purely ministerial. However, it will not lie to compel |gthe performance of an act which contains any element of discretion, however slight. The duty must be a clear and specific legal duty. LSA-C.C.P. arts. 3861, et seq.; Felix v. St. Paul Fire & Marine Ins. Co., 477 So.2d 676 (La.1985); Reynolds v. Hospital Service District # 1, 525 So.2d 668 (La.App. 1st Cir.), writ denied 531 So.2d 480 (1988); Caldwell Country Club v. Dept. of Trans. & Dev., 438 So.2d 723 (La.App.2d Cir.1983). The Fire Districts contend that the statutory duty sought to be imposed in their application for writ of mandamus could not be more plain. We agree.
Louisiana law requires that all property, except exempt property, shall be subject to taxation. LSA-R.S. 47:1951. It also provides that the taxable property shall be assessed by the state’s assessors. LSA-R.S. 47:1952(A). If any tax assessor intentionally, knowingly or through negligence omits any taxable property from the assessment list, or permits it to be omitted therefrom, he and his sureties, in solido, shall be liable on his official bond for the full amount of the taxes due, plus interest and attorney’s fees. LSA-R.S. 47:1957(F).
LSA-R.S. 47:1966 further provides that when it is discovered that a tract of land or other property is omitted in the assessment of any year or series of years, or is in any way erroneously assessed, the property shall be assessed by the assessor or tax collector for the whole period during which the property may have been omitted or improperly assessed. However, no back taxes for more than three years shall be assessed against omitted or improperly assessed property.
These statutes are clearly mandatory. Once a tax has been approved by the voters of a district, there is no discretion on the part of the assessor as to whether he will assess the property. In this regard, his duty is purely ministerial. | eTherefore, the trial court erred when it denied plaintiffs’ petition for a writ of mandamus.
As to the defendant’s contention that the imposition of the special tax is a violation of due process, we note that the constitutionality of a statute must first be properly raised and addressed by the trial court, not the appellate court. Johnson v. Welsh, 334 So.2d 395 (La.1976); Becker v. Allstate Insurance Co., 307 So.2d 101 (La.1975); Summerell v. Phillips, 258 La. 587, 247 So.2d 542 (1971) and cases cited therein. No assertion as to the constitutionality of the taxes was pleaded prior to the brief filed in this Court. Accordingly, we do not reach the issue of the constitutionality of the taxes.
DECREE
For the reasons assigned, that part of the judgment appealed which reflects plaintiffs’ application for writ of mandamus for the years 1989, 1990 and 1991 is reversed and judgment is now rendered by this court ordering the writ of mandamus issue for the years 1989,1990 and 1991 as prayed for. All costs of trial and appeal are assessed to the appellee.
REVERSED AND RENDERED.
APPLICATION FOR REHEARING
Before MARVIN, HIGHTOWER and BROWN, JJ., and CULPEPPER and PRICE, JJ. Pro Tern.
Rehearing denied.