Dear Ms. Edwards:
On behalf of Livingston Parish Gravity Drainage District No. 1 (the "District"), you requested the opinion of this office regarding a number of questions which have arisen due to the annexation of a portion of property in the District.
You advised that in 1985, the voters approved a 1/2 cent sales tax for a period of twenty (20) years to be levied on the sale, use, lease or rental, consumption, storage for use or consumption, of tangible personal property and on the sales of services in the District. The proposition further provides that the tax "will not be collected within the present corporate limits of the city of Denham Springs, Louisiana, so long as said City levies and collects the one percent (1%) sales and use tax originally authorized by ordinance adopted on December 29, 1958, and remits to the District or pays directly from the avails of said municipal tax the City's pro rata share of the cost of drainage improvement projects benefitting the City . . ."
You further advised that the District's tax, which will expire next year unless renewed by the voters, has been collected by the Livingston Parish School Board (the "School Board). The District's boundaries are established by the Livingston Parish Council (the "Council"). During the term of the tax, the City of Denham Springs (the "City") annexed land encompassed within the District. The School Board stopped collecting the District's 1/2 cent sales tax within the newly annexed areas and began the collection of City taxes. The District was not informed of this change and has continued to perform drainage services within these areas. The District and the City have not entered into a cooperative intergovernmental agreement regarding service into the annexed areas of the District.
 1. Does the Livingston Parish Gravity Drainage District No. 1 subsist as a special service district as contemplated by LRS — R.S. 33:221?
This question must be answered in the negative. R.S. 33:221 defines "special service districts" to mean parochial water, sewer or fire protection districts. R.S. 33:221 does not include gravity drainage districts nor any other type of special district in the definition of "special service district". The language of R.S. 33:221(A) is as follows:
 "A. If a municipality annexes territory contained in a parochial water, sewer, or fire protection district, hereinafter collectively referred to as special service districts, the municipality and each such special service district are hereby authorized to enter into a contract granting to either the municipality or the special service district the exclusive right to provide service in the annexed area." (Emphasis added)
 2. Presuming Gravity Drainage District No. 1 is a special service district, are the opinions of the Attorney General issued in relation to Fire Protection Districts applicable to Gravity Drainage District No. 1? Earlier opinions on these issues have been decided when the special service district was a fire protection district. (See 1999 WL 106970 (La. A.G.); 1993 WL 438586 (La. A.G.))
As R.S. 33:221 does not include gravity drainage districts as special service districts for purposes of said statute, your second question is moot.
 3. Is the Livingston Parish Gravity Drainage District #1 entitled to collect a duly authorized 1/2 cent sales tax in areas of the District that were subsequently annexed into the City of Denham Springs when the District and the City did not enter into a cooperative agreement as to services? Again, if the Gravity Drainage District No. 1 is a special service district, it would appear that the answer is yes. If the District is not considered a special service district, please advise as to the answer.
It is the opinion of this office that the District may continue to collect its sales tax in the areas which have been annexed into the City. We call your attention to the decision of Caddo Parish FireDistricts Two, Three, Five and Six v. Clingan, No. 26,453 (La.App. 2 Cir. 1/25/95) 649 So.2d 156, where a portion of certain fire districts which levied ad valorem taxes were annexed by a municipality. The fire districts and the municipality did not enter into an intergovernmental agreement pursuant to R.S. 33:221. The court found that in the absence of a contract providing that the municipality was to provide services in the annexed area, the district had the right to provide services and levy taxes in the annexed area, stating in pertinent part:
 "While not binding, we agree with an opinion of the Attorney General written on June 3, 1992, which states, in part, as follows:
 By providing municipalities and service districts with a right to contract, the legislature has recognized that in absence of a contract granting jurisdiction to the municipality, the districts have the right to provide services (and levy taxes) in annexed areas.
* * * * * *
 [I]t is only when the municipality and the special service district enter into a contract and agree that the municipality will have exclusive jurisdiction to serve the annexed area that the district must cease levying maintenance taxes therein, and even then the district "may continue to levy such maintenance tax as theretofore has been authorized for the full period of such authorization."
See also, Op.Atty.Gen. Nos. 92-296, 94-461 and 99-46. We are not aware of any Constitutional nor statutory provision that provides that a special district's boundaries contract or the size of the district is reduced upon annexation of a portion of the District by a municipality. A special district is a political subdivision of the State as is a municipality. See La. Const. Art. VI, Secs.19 and 44.
 4. A previous opinion rendered at 1987 WL 288640 (La. A.G.) provided that if a retail outlet was split by a boundary annexation then the most equitable solution would be to apply the tax rate of the area in which a majority of the square footage of the store is located. This situation exists now in Livingston Parish. The City annexed a portion of the Drainage District to allow for the expansion of a large retail store. Should all of the tax be collected on behalf of the City because the majority of the store is sited in the municipal city limits?
We can find no statutory direction nor case law regarding the factual situation described in this question, accordingly, our answer must be derived according to equity. La.C.C. art. 4. In accordance with Op.Atty.Gen. No. 87-23, if the tax rates of both the District and the City in combination do not exceed the statutory limits for sales tax, then the taxes of both the District and the City should be levied and collected in the annexed areas. However, if the combined District and City sales taxes exceed the statutory maximum, then the taxes should be pro-rated between the District and the City.
In the instance of a store which is located partially in the District, partially in a non-newly annexed area of the City and/or partially in an annexed area of the City, it would be an impossible task for the store owner to collect different sales taxes depending upon where in the store the transaction occurred. One equitable solution would be for the City and the District to agree that the store would pay the taxes of the political entity where the most square footage of the store is located. Another equitable solution would be for the City and the District to agree to a pro-rata distribution of the tax proceeds generated from the store. There are other possible solutions which could be worked out by the City and the District.
 5. The Drainage District and the City of Denham Springs have not entered into a cooperative contractual relationship as per the original terms of the proposition. (See Exhibit 1) Considering the previous opinions, it would appear that the Drainage District can not only collect the tax until it expires, but it may also call for an election to renew the tax, as per WL 1993 438586 (La. A.G.). Please advise if the above statement is correct.
It is our understanding that the statutory authority for the levy of the sales tax is found in R.S. 38:1805, which provides as follows:
 "A. Subject to the approval of a majority of the electors within the Livingston Parish Gravity Drainage District No. 1 at a special election called for the purpose, the police jury of Livingston Parish as the governing authority of the district is hereby authorized to levy a sales and use tax not exceeding three quarters of one percent within the district. The tax shall be imposed by ordinance of the police jury and shall be levied upon the sale at retail, the use, the lease or rental, the consumption, the distribution and storage for use or consumption, of tangible personal property, and upon the sales of services within the district, all as presently or hereafter defined in R.S. 47:301 through 317. This tax shall be in addition to all other taxes currently levied in Livingston Parish, and except where inapplicable, the procedure established by R.S. 47:301 through 317 shall be followed in the imposition, collection, and enforcement of the tax. Procedural details necessary to supplement the provisions of those sections and to make said provisions applicable to the tax herein authorized shall be fixed in the ordinance of the police jury imposing the tax.
 B. Before any tax is levied under the provisions of this Section, there shall be submitted to the qualified electors of the area within the district at a special election called for that purpose a proposition to authorize the imposition of the sales and use tax including the purpose, rate, and duration of the tax at an election to be conducted in accordance with the general election laws of the state of Louisiana, and a majority of those voting in the election shall have voted in favor of the proposition. In addition, the proposition may also include provisions authorizing the funding of the sales and use tax into negotiable bonds or certificates of indebtedness payable solely from an irrevocable pledge and dedication of all or a portion of the proceeds of the tax subject to the prior payment of the costs and expenses of administration and collection of the tax.
 C. The proceeds of the tax authorized by and levied in accordance with the provisions of this Section shall be used exclusively to acquire drainage works; rights of way for canals and ditches; flood prevention works; equipment and facilities necessary to construct, maintain, and operate outlets for the waters of the district; and to prevent flooding.
 D. The district is further authorized to execute local service agreements with the governing authorities of municipalities located within the district which would provide that those municipalities would pay a portion of the cost of the drainage improvements." (Emphasis added)
Thus the District can continue to levy its sales tax and the District may request renewal of the sales tax, however, only the voters in the District are entitled to vote on a new sales tax.
 6. Please review the following language of the original 1985 proposition: ". . . provided that the said tax will not be collected within the present corporate limits of the City of Denham Springs, Louisiana so long as said City levies and collects the one percent (1%) sales and use tax originally authorized by ordinance adopted on December 29, 1958, and remits to the District or pays directly from the avails of said municipal tax the City's pro rata share of the cost of drainage improvement projects benefitting the City, as determined by engineering reports and intergovernmental contracts between the City and District,. . ." The District has never entered into an agreement with the City nor has the District been paid for any pro rata share of work actually done on drainage projects. As long as the language of our renewal proposition matches the above, and as long as we have no agreement with the City of share services, we assume we are authorized to collect the tax in all areas of the Livingston Parish Drainage District No. 1 that are situated within the Denham Springs city limits. Is this correct?
We do not disagree with your conclusion, provided that the City's tax together with the District's tax do not exceed the statutory limits for sales taxes.
 7. Can the Board authorize a proposition as a renewal tax when the language refers to the "present corporate limits of the City of Denham Springs, Louisiana" though the 2004 present corporate limits of the City of Denham Springs, Louisiana are not the 1985 present corporate limits of the City of Denham Springs? The language will refer to exactly the same thing (the city limits), though the thing will be physically different.
If the 2004 proposition were to state that the tax was to be levied outside the "present corporate limits of the City of Denham Springs, Louisiana", the tax could not be levied within the 2004 corporate limits of the City even though the language is identical to the 1985 proposition language. We would suggest that the 2004 tax proposition could be considered a renewal tax if the proposition stated that the tax was to be levied within the corporate limits of the City of Denham Springs, Louisiana as defined in 1985.
 8. As per WL 610908 (La. A.G.) and 1999 WL 106970 (La. A.G.), the District assumes that it shall be able to collect all duly authorized ad valorem taxes in areas that were annexed by the City after the institution of the tax, and further that the District may renew its taxes for the area annexed and continue to collect the tax in the absence of a cooperative contract between the City of Denham Springs and District. Is this assumption correct? (Please note that the Drainage District collects a 1/2 cent sales tax as well as a 5 mil ad valorem tax.)
This office was not supplied with a copy of the ad valorem tax proposition so we are unable to address the specifics of that proposition; however, as a general matter, we are unaware of any reason why the rationale of our opinions concerning sales taxes would not also apply to the District's ad valorem tax.
Trusting this adequately responds to your request, we remain
 CHARLES C. FOTI, JR. Attorney General
 BY: ____________________________ MARTHA S. HESS Assistant Attorney General
CCF, JR./MSH